## BROWN CARPENTER *vs.* THE EASTERN TRANSPORTATION LINE.

In an action against the owners of a tug boat to recover damages for negligence in colliding with, and sinking, a canal boat, evidence to show that the plaintiff had an insurance on his boat, and received a part of his loss from the insurers, is inadmissible.

In such an action, negligence is a question of fact, which belongs to the jury, in view of all the evidence and the attending circumstances; and, if no error occurs in the submission of the cause to them, their verdict in favor of the plaintiff cannot be disturbed.

In his charge to the jury, the judge, referring to the testimony of the various witnesses respecting the manner in which the injury was inflicted upon the plaintiff's boat, said : " If those tugs did come down on the plaintiff's boat then, and became loosened from their moorings, then the defendants are chargeable with this negligence." *Held*, that if the case had been given to the jury with the charge unmodified, or uncorrected, it would have been ground for a new trial.

That it would have been correct if the judge had said that such fact raised a presumption of negligence, and cast upon the defendants the burden of proving

Carpenter *v.* Eastern Transportation Line.

that such consequence did not follow from the mere getting loose of the tugs, but that such result was imputable to inevitable accident.

At the close of the charge, the defendants' counsel requested the judge to charge as follows: "That if the defendants' boat came down upon the plaintiff's boat, and was forced to do so by pressure of ice upon the tug, which could not have been avoided by the exercise of care and prudence, then there can be no recovery." The judge so charged. *Held*, that this response of the judge to the request must be deemed to have adopted the language of the request, and to have incorporated the same into the charge. That it obviated the error in the charge as previously made, and justified the overruling of the exception to the charge. And that, in that view, a judgment for the plaintiff could be sustained.

The defendants having undertaken to tow the plaintiff's canal boat from New York to Bridgeport, through the sound and the difficult and dangerous pass of Hell Gate; *held* that they were bound to exercise care, caution and diligence in proportion to the dangers of the navigation, and to tow and keep such boat in safety. That they were bound to employ competent and skilful seaman familiar with the locality and with the customary risks attending the navigation upon the waters of the sound, where the tide ebbs and flows.

*Held*, also, that the defendants' servants were bound to know the state and natural law of the tide, and to take into account its time of flood and ebb, and to guard against all the changes, chances and perils incident thereto; but they were not insurers against the perils of the sea, or of the sound.

APPEAL from a judgment entered on a verdict at the circuit, and from an order denying a motion for a new trial.

The action was to recover damages for carelessly and negligently sinking the plaintiff's canal boat, in the East river, on the 27th of February, 1873. The plaintiff owned the boat Eddie and George, and about the 24th of February, 1873, Crane & Hurd, of Bridgeport, Conn., hired the plaintiff and his boat to receive a cargo of corn, at New York, to be towed by the defendants' steam tugs to Bridgeport. On the 26th of February, the defendants, with their tug boat Terror, towed the plaintiff's boat out of New York harbor, through Hell Gate to Port Morris, where they arrived about dusk, and tied up for the night. The defendants owned two tugs, the Terror and the Vine, both of which were used in towing boats, and each towed a part of the boats through Hell

Gate to Port Morris, from which place it was designed for one tug to take the whole fleet to its place of destination. When they arrived at Port Morris the plaintiff's boat was tied to the wharf, as directed by the defendants ; and the captains of the tugs Terror and Vine placed their tugs abreast, about 150 feet further east, and in the rear of the plaintiff's boat. About one o'clock, in the night, the plaintiff and his crew were alarmed by a collision, and on going upon deck found the steam tug Terror with her bow against the stern of the plaintiff's boat, forcing her from her moorings and against the stern of another boat, called the Brown, lying below her, with such force as to spring a leak in her side and cause her to leak and sink, in deep water, from which she was not recovered or found.

The action was tried by the court and a jury, in Cayuga county, in January, 1876, Justice DWIGHT presiding. And a verdict was found for the plaintiff, for $3,060, upon which judgment was rendered.

*H. R. Selden*, for the appellants.

*H. N. Howland*, for the respondent.

*By the Court*, E. DARWIN SMITH, J. At the close of the plaintiff's case the defendants' counsel moved for a nonsuit, on the ground that the plaintiff had failed to make out a cause of action, and that there was no evidence of negligence on the part of the defendants. The motion was denied, and the defendants' counsel duly excepted. This exception, I think, was not well taken. The plaintiff had clearly proved, at that stage of the trial, that the defendants' tug boat without fault on his part had run into and struck his canal boat with great force and violence, and that in consequence of such collision the plaintiff's boat was injured and sunk, as alleged in his complaint. The plaintiff had clearly made

out a *prima facie* cause of action and a tortious injury, or certainly an injury apparently the result of gross carelessness and negligence on the part of the defendants' servants, calling upon the defendants to explain and disprove such apparent wrong. (*The Louisiana,* 3 *Wallace,* 164.)

The motion for a nonsuit was properly denied.

Upon the merits, the question of negligence on the part of the defendants has been passed upon by the jury. It was a question of fact which belonged to them, upon the whole case, and I do not see how their verdict can be disturbed if no error occurred in the submission of the cause to them, in the progress of the trial.

It was not error to overrule the evidence offered to show that the plaintiff had an insurance on his boat and had received part of his loss from the insurance company. Such evidence was held inadmissible in *Merrick* v. *Brainard,* (38 *Barb.*, 574, *affirmed in Court of Appeals,* 34 *N. Y.*, 208,) and also in *Collins* v. *Same Defendants,* (5*th Hun,* 506,) and other cases.

In his charge to the jury, the circuit judge, referring to the testimony of the various witnesses in relation to the manner in which the injury was inflicted upon the plaintiff's boat, said as follows: "That if those tugs did come down on the plaintiff's boat there, and became loosened from their moorings, then the defendants are chargeable with this negligence." To this part of the charge the defendants' counsel duly excepted.

Aside from a denial that the defendants' tugs did come down from their moorings and collide with the plaintiff's boat, or were at the time loosened from the wharf to which they were attached, or in any manner caused or contributed to the loss of said boat, the defendants ought also to establish, that if they were in error on this point, and the collision of their tugs with the said canal boat did occur as claimed by the plaintiff, such collision, and the injury consequent thereupon,

were the result of inevitable accident, or a *vis major*, which human skill and precaution could not have prevented.

The defendants on this branch of their defence had sought to show, and gave evidence tending to prove, that the injury to the plaintiff's boat was caused by an unusual flow of ice coming down the East river from the sound, upon an ebb tide; that their tugs were securely moored at the wharf mentioned in the evidence, where they were fastened on the previous evening, and that such flow of ice was unexpected and unforeseen, and could not have been guarded against; and that such flow of ice forced these tugs from their moorings and caused the said injury.

There was a good deal of conflict in the testimony in respect to the relative position of the plaintiff's boat and the defendants' tugs, and also in respect to the question whether the latter did in fact become loosed from their moorings and collide with the plaintiff's boat; and the defendants claimed that if the plaintiff was correct in his testimony in that respect, such evidence did not establish his cause of action unless it was made to appear, also, affirmatively, that said tugs struck his boat through the carelessness or negligence of the defendants' servants in charge of them; and also insisted that there was no evidence of such negligence. This question of negligence in the control of said tugs, in permitting them to get loose and doing the injury in question to the plaintiff's boat was the chief question of fact in dispute in the cause, and this question of fact was for the jury to decide, in view of all the evidence and the attending circumstances of the case.

The instructions of the judge that "if the tugs did come down on the plaintiff's boat there, and became loosened from their moorings, then the defendants were chargeable with this negligence," was apparently a virtual decision or instruction that it was negligence on the

part of the defendants to let the said tugs so come down, and excluded the idea that such loosing and coming down of said tugs could have been the result of unavoidable accident, mischance or misfortune, and thus virtually overruled this branch of the defence.

The defendants undertook to tow the plaintiff's canal boat from New York to Bridgeport, through the sound and the difficult and dangerous pass of Hell Gate. They were bound to exercise care, caution and diligence in proportion to the dangers of the navigation, and to tow and keep such boat in safety. The defendants were bound to employ competent and skilful seamen familiar with the locality and with the customary risks attending the navigation upon the waters of the sound where the tide ebbed and flowed.

The defendants' servants were bound to know the state and natural law of the tide, and to take into account its time of flood and ebb, and to guard against all the changes, chances and perils incident to, and therefrom.

But they were not insurers against the perils of the sea, or of the sound. They were bound to use due diligence and care, and proper nautical skill, to guard against such perils, and exercise good and prudent seamanship to conduct the plaintiff's boat safely to its destined haven. They were not responsible for accidents or injuries resulting from unforeseen perils or fortuitous changes of wind, or from storm or tempest, or unusual flood of ice or tidal waves, which they could not foresee and against which, with the utmost care, they could not guard.

If the plaintiff's boat was injured in consequence of any such peril of the sea, or risk of navigation between New York and Bridgeport, not imputable to the defendants' negligence, they were not responsible for the plaintiff's loss.

It was for the jury to pass upon this question.

In stating to the jury that if the defendants' tugs did come down upon the plaintiff's boat there, and became loosed from their moorings, the defendants were chargeable with this negligence, the learned judge did not, I think, intend to take this question of negligence from the jury, or control their judgment upon the question. He was discussing the question of the conflict in the testimony upon that point; the plaintiff's witnesses, on the ground at the time, positively asserting that the injury to the plaintiff's boat was caused by the tugs getting loose and floating down with the tide and striking said boat, which the defendants' witnesses on the tugs with equal positiveness denied. The judge, in view of such conflict in the evidence, which he clearly left to the decision of the jury, made the remark excepted to, in seeming accord with the theory on which said cause was tried on this point; assuming that if the plaintiff's witnesses were believed on that question the plaintiff had made out a case of negligence, and the defendants were responsible for such negligence.

The charge would have been correct if the judge had said that such fact raised a presumption of negligence, and cast upon the defendants the burden of proving that such consequence did not follow from the mere getting loose of such tugs, but that such result was imputable to inevitable accident.

This would have been in accordance with the proper rule in a similar case, as stated by Judge GRIER in the case of *The Louisiana,* (3 *Wallace,* 164,) where he said: "The collision being caused by the Louisiana drifting from her moorings, she must be held liable for the damages consequent thereon, unless she can show that the drifting was the result of inevitable accident, or was *vis major* which human skill and precaution, and a proper display of nautical skill, could not have prevented."

If the case had been given to the jury, with the charge

Carpenter *v.* Eastern Transportation Line.

unmodified or uncorrected, I think the defendants' exception to it would have been a valid one, and we should be constrained to grant a new trial upon that ground. But it appears that at the close of the charge, the defendants' counsel requested the judge to charge as follows : "That if the defendants' boat came down upon the plaintiff's boat and was forced to do so by the pressure of ice upon the tug, which could not have been avoided by the exercise of care and prudence, then there can be no recovery ;" and the judge so charged.

The response thus made by the circuit judge to the request of the defendants' counsel, modifies the charge as previously made, and I think corrects the error of said charge in the particular in question.

The request was obviously made in respect to the precise point of the charge embraced in the exception ; and the charge as then made, in conformity to such request, must be deemed to adopt the language of the request, and to incorporate the same into the charge, and, I think, be held to obviate the error of the charge as given, and lead to the overruling the exception. In this view the judgment below can be, and I think should be, affirmed.

Judgment and order affirmed.

[FOURTH DEPARTMENT, GENERAL TERM at Rochester, December, 1876. *Mullin, E. Darwin Smith* and *Talcott,* Justices.]