## THOMPSON *et al. vs.* THOMPSON.

1. An administrator cannot, without an order from the ordinary, legally sell a promissory note, payable to his intestate, which has come to his hands as assets. By selling without such order, he renders himself liable for the value of the note, as he would for the value of any other personalty illegally converted or disposed of. And if he exchange a note for one more valuable, he becomes liable, at the election of the beneficiaries of the estate, for the value of the latter in lieu of his liability for the former. Such dealing however, will not render him a guarantor of either note beyond its actual value.

2. Where several distinct matters involving diligence are presented to the jury, while it is proper to charge a general principle applicable to them all, yet if a specific charge, which is legal, apt and precisely adjusted to one of them, be requested, it is proper to give the latter also, if it would materially aid the jury in applying the general principle to this one of the several matters for their consideration.

3. Where the non-production of a note is not the sole fact in evidence bearing on the question of payment, there is no occasion to charge the jury on any presumption that would arise or not arise from that fact alone.

4. The duty of an administrator to pay taxes at his peril depends upon whether he has or ought to have the money with which to do it.

5. The inventory required by law to be made and returned by an administrator is partly for information of creditors of the estate; and where the administrator of one of the creditors is sued for failing to collect from the administrator of the debtor, the inventory made and . returned by the latter is admissible in evidence to show means of information of which the former might have availed himself touching the debtor's estate and the particular property of which it apparently consisted.

6. Whether a deed between strangers to the cause on trial was improperly admitted in evidence (neither the deed nor any recital of its contents being in the record), is not decided.

7. Neither the rejection nor admission of immaterial evidence is cause for new trial.

8. No error appears in the charge of the court set out in the 13th ground of the motion.

9. An administrator who is a debtor of the intestate, either individually or as surviving copartner, is chargeable, as administrator, with the amount of such debt; and the statute of limitations will not protect him against accounting for it so long as he remains accountable for assets generally.[*]

March 5, 1887.

Administrators and Executors. Sales. Charge of Court. Presumptions. Taxes. Practice in Supreme Court. Evidence. Partnership. Debtor and Creditor. Before Judge BOYNTON. Upson Superior Court. January Term, 1886.

To the report contained in the decision, the following is added in connection with the second, eighth and ninth divisions thereof:

Among the defences set up were the statute of limitations, and that the firm of E. B. & D. S. Thompson (E. B. being the defendant) bought and paid for the property set out in the bill; that they were not indebted to the decedent at the time of his death; and that no note or other indebtedness of said firm ever came into his hands as administrator.

---

[*]See. 8 Am. Dec. 478; 62 *Id.* 396; 1 Am. R. 254.

The jury found for the defendant. The complainants moved for a new trial on numerous grounds, only three of which need be stated more fully than they are set out in the decision. They were substantially as follows :

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court refused to charge as follows : "If defendant had a note on T. P. Holloway, and if he traded this note for a rent-note which he could, by the exercise of ordinary diligence, have collected, then he would be liable for that note with interest." [The general charge of the court contained the following:

"It is the duty of an administrator to exercise all due diligence in hunting up all the assets of the estate of his intestate, and if, after all reasonable diligence in trying to find and possess himself of assets, if such exist, he fails to find any such assets, then he would not be responsible for what did not come into his hands, or which he could not find or obtain after diligent effort to find them. If notes and accounts, or other evidences of debt, came to the hands of the defendant, as administrator, then he was bound to place in suit every debt due the estate which he may reasonably expect to recover, and if, by his neglect or indulgence, the debt is barred by the lapse of time, or is otherwise lost to the estate, he is responsible for such loss as may occur by reason of his neglect or indulgence. For it was his duty to exercise the utmost diligence in collecting up the debts due his intestate, and the defendant would be authorized to employ and pay attorneys for bringing suit, and pay fees out of estate. The defendant had the legal right to sue, in his individual name or as administrator, debts which belonged to his intestate's estate. The question is, did the defendant exercise that diligence in his effort to collect the debts due the estate, which I have charged you was his duty to do? In determining the question of diligence on part of the defendant, you can consider the condition of the country, the pecuniary condition of the debtors, the reasonable prospects of making collections by suit, the liens and judgments against property of the party owing the debt, and all the evidence introduced before you tending to illustrate the diligence or negligence on part of defendant in his efforts to collect the debts due this estate. . . . If you should find that the defendant, as administrator, had a note on one party and exchanged it for an evidence of debt on another, and you should find that the debt was lost by reason of the exchange, or if you find from the evidence that the note he first had, or the one received in exchange,

could have been collected by the exercise of all proper diligence on the part of defendant, you would be authorized to find against the defendant for the amount, if any, thus lost to the estate. You should look to the whole evidence submitted to you, and if you find that any notes, accounts or evidences of debts due the estate of defendant's intestate went into defendant's possession or control, then you should look to the evidence and find whether any one or more of such debts was lost by the failure of the defendant to sue or prosecute suits on the same, or by the defendant's failure to pay taxes on the assets in his hands, or whether any one or more of said debts were lost for want of all proper and reasonable diligence on part of defendant in his effort to collect any one or more of such debts; and if you should find from the evidence that any one or more debts were lost for any of these reasons, then you would be authorized to find against the de-fendant for principal and interest of such debts. But if you find that the defendant exercised all proper and reasonable diligence in his efforts to collect such debts, if any, which came into his control as administrator, and failed to collect any such debts, then you would be authorized to find for the defendant on this issue, unless you find that the defendant has made collections for which he has not accounted."]

(3.) Because the court charged as follows: " In arriving at a conclusion on this issue, you should look to all the evidence, whether or not there was such a note or debt as that claimed by complainants, whether paid, and what negotiations were pending about same; if such a note, when and where was it last seen; what were the movants (?) of him who is alleged to have had it, when and where he died; the failure to produce said note, if any, by those who are claimed to have had it,—and say, from all the evidence, whether it appears with reasonable certainty that there was a note or evidence of debt or liability for which defendant was bound, in existence and unpaid at the time of W. W. Thompson's death."

John D. Stewart; Allen & Tisinger; John I. Hall, for plaintiffs in error.

A. M. Speer; J. A. Hunt; M. H. Sandwich; J. A. Cotten, for defendant.

BLECKLEY, Chief Justice.

This was a bill filed by certain heirs and distributees of an intestate, who died a citizen of Kentucky. There was an administration there upon his estate, and also one in Georgia upon his effects in Georgia. This bill was filed against the Georgia administrator for an account, and the claim set up in it consisted of two classes of debts: (1), those which the testator left owing to him by persons in Georgia other than the administrator; (2), a certain debt which it was claimed was due from a former partnership of which the Georgia administrator was the surviving partner. The general questions made were, whether the defendant, as administrator, had used proper diligence to collect as against those other debtors; whether there was a debt by note against the partnership of which he was the survivor; and whether, if there was such a debt unpaid at the time he took the administration, he would be responsible for it in his character of administrator, the bill being filed against him in that character.

1. At the trial, it appeared that there had been a change of a certain note from a debt due by two persons to a note payable to the administrator, signed by another person. It further appeared that this second note had been exchanged for a third, and that only a small amount had been collected on this debt. The complainants requested the court to charge to the effect that the adminstrator had no power to sell a note belonging to the intestate which came to his hands as assets; and that if he did so, he would be a guarantor of any note that was taken for it; and that if he exchanged the second note for a third, he would be a guarantor of that note. The court declined to give such instruction to the jury; and the motion for a new trial is founded in part upon that refusal.

In respect to this point, we rule as follows: An administrator cannot, without an order from the ordinary, legally sell a promissory note, payable to his intestate, which has

come to his hands as assets. By selling without such order, he renders himself liable for the value of the note, as he would for the value of any other personalty illegally converted or disposed of. And if he exchange a note for one more valuable, he becomes liable, at the election of the beneficiaries of the estate, for the value of the latter in lieu of his liability for the former. Such dealing, however, will not render him a guarantor of either note beyond its actual value.

Looking at the legislation of Georgia upon the subject of disposing of choses in action by an administrator, we think it clear that where an administrator has doubtful or insolvent notes to sell, he ought to apply to the ordinary for leave to sell, and make the sale publicly. Code, §2558. He has no right to enter upon a course of trade with such assets in his own way. It may be that where a note, still in the channels of commerce, comes to the hands of an administrator, and he wants to realize on it, he could endorse it, treating it as worth its full amount, and getting that much for it. It may be that he could pass title to it under Georgia law, just as he could under English law; but the question before us relates to dead paper, not paper in circulation. It comes within the very words of the statute, and ought not to be offered for sale, nor the title to it relinquished, nor any attempt made to pass the title to another, save in the mode prescribed by the statute.

2. Another request, made in writing, to charge the jury, which the court declined to give, was to the effect that if the administrator could have collected this third note by the exercise of ordinary diligence, he would be liable for the amount of that note. The reason for declining this request was that the judge thought the general charge covered it. It is not controverted that the request of itself was a proper one; but as the principle was embraced in the general charge, it is thought that that is a sufficient reason for not giving the request. We think not, and rule to this effect: Where several distinct matters involving

,diligence are presented to the jury, while it is proper to charge a general principle applicable to them all, yet if a specific charge, which is legal, apt and precisely adjusted to one of them; be requested, it is proper to give the latter also, if it would materially aid the jury in applying the general principle to this one of the several matters for their consideration.

Now, law is not only to be submitted to the jury, but it is to be applied by them; and where its application is materially aided by a specific request, there seems as much reason to give that request as to give the principle; and looking to the evidence in this case, we have no doubt that the request was a proper one. It was bringing the general principle down to this specific instance; and the jury would have been helped materially by having the very words of this request delivered to them as a part of the charge of the court. A large part of the pressure of the case was upon this one paper.

3. Another request to charge·was made, which set out the effect of not producing the alleged note against the partnership, of which the administrator was the surviving ·copartner. The proposition laid down was, that the non-production of the note would not be evidence of payment; and some further matter was contained in the request. The declining of that request was proper, because there was no need to state what would be the effect of the non-production of the note, standing alone; there were other ·facts that made a charge upon its non-production as a single, solitary fact, altogether inapplicable to the case. Where the non-production of a note is not the sole fact in ·evidence bearing on the question of payment, there is no ·occasion to charge the jury on any presumption that would arise or not arise from that fact .alone.

4. Another request to charge was that it was the duty .of the administrator to pay taxes, and that he would be responsible for the consequences of not doing so. The pertinency of the request was this : The administrator had

brought certain actions against the debtors of the estate; and one of them had been dismissed for the non-payment of taxes, under a statute which was for a while considered to be a valid law of Georgia. Another one of the actions was dismissed, without perhaps stating the cause of the dismissal, yet leaving it inferable that it also may have been dismissed for the same reason; and the complainants wanted the court to instruct the jury that it was the duty of the administrator to pay taxes, and that if he did not pay them, he was liable for the consequences. The duty of an administrator to pay taxes at his peril depends upon whether he has or ought to have the money with which to do it. There is great doubt, under the evidence, whether the administrator had any available assets to pay taxes with unless he was a debtor to the estate. If he was really a debtor in the amount claimed, he would be treated as having assets. But apart from that resource, his command of assets seemed to be quite limited; and we think he was not to pay taxes unless he had the means to pay them, or was chargeable in some way with having the means. So this request was properly declined, the qualification as to means not being embraced in it.

5. One of the debtors to the estate was dead, and the legal representative of that estate had returned an inventory, according to law, embracing certain property as belonging to the deceased. That inventory was offered in evidence in this case, and was excluded. Upon that point we rule this: The inventory required by law to be made and returned by an administrator is partly for information of creditors of the estate; and where the administrator of one of the creditors is sued for failing to collect from the administrator of the debtor, the inventory made and returned by the latter is admissible in evidence to show means of information of which the former might have availed himself touching the debtor's estate and the particular property of which it apparently consisted.

Of course this inventory would not be conclusive that

there were assets, or of what the assets consisted; but the very object in making it was in large part to inform the creditors of the estate as to what the administrator proposed to administer; and being upon the public records it was the duty of this administrator now sued to look at it, or otherwise to become acquainted with its contents. He ought to have looked into the condition of the estate against which he had claims; and a part of that investigation would have been to examine the inventory, and we do not see any reason whatever for its exclusion. It ought to have come into this case for what it was worth, as evidence to show that he was put upon notice that the effects mentioned in the inventory were being treated as assets. It seems to us impossible that there could be any legal reason why it should not be relevant for that purpose.

6. One ground of the motion for a new trial was, that a certain deed between strangers to this case was admitted in evidence, and to see that deed, we are referred by the motion to the brief of evidence; but there is no such deed in the brief; and though from a statement of the judge found in the record, he thinks it was admitted in evidence, it is very doubtful whether it was; indeed, looking at the brief and finding it absent, we can be almost sure that it was not. So we say simply this: Whether a deed between strangers to the cause on trial was improperly admitted in evidence (neither the deed nor any recital of its contents being in the record), is not decided. It looks to us, under the facts, that such a deed would not be admissible; but of course we rule nothing on the point.

7. Another ground of the motion for new trial complains of the rejection of certain evidence tending to show that this administrator, when he visited Kentucky, manifested by his conduct a disposition to avoid the family of which complainants are members, a family related to him by blood. The evidence of his conduct on that occasion was probably admissible, simply on the ground that a doubt as to admissibility should be given in favor of the evidence,

not against it. But we think it is of no sort of importance whether it was admissible or not; and we merely rule that neither the rejection nor admission of immaterial evidence is cause for a new trial.

8. A part of the charge of the court is complained of, as set out in the 13th ground of the motion for a new trial. We see no error in that portion of the charge.

9. An examination of the authorities makes it clear to us that an administrator, who is a debtor to the intestate individually or as surviving copartner, is chargable as administrator with the amount of such debt; and that the statute of limitations will not protect him against accounting for it so long as he remains accountable for assets generally. 2 Wms. Ex'rs, top page 1418, bottom page 1310, note(i); Shoul. Exr's & Admr's, §230; 2 Lomax Exr's, 230; Ingles *vs.* Richards, 28 Beav. 366; Freakly *vs.* Fox, 9 B. & C. 130; Duffee *vs.* Buchanan, 8 Ala. 27; Weems *vs.* Bryan, 21 Ala. 302; Leland *vs.* Felton, 1 Allen 531: Potter *vs.* Titcomb, 7 Grlf. 302; Everts *vs.* Everts, 67 Barb. 577. And see code, §2519. In the case before us, the intestate was not a member of the firm of which the administrator was the survivor. The deceased partner was a brother of the administrator.

We reverse the judgment refusing a new trial, on the points discussed in the second and fifth heads of this opinion.

Judgment reversed.