## 73158. DEDOUSIS v. FIRST NATIONAL BANK OF COBB COUNTY.
### (352 SE2d 577)

Carley, Judge.

The instant suit was brought against appellant-defendant Mr. Louis Dedousis as the guarantor of a note made by Southern Garden Company (SGC) in favor of the appellee-plaintiff First National Bank of Cobb County. The evidence presented at a bench trial showed the following: Appellant was president, major stockholder and the key principal of SGC, a corporation which at the time of trial was no longer viable, had no assets and had not been operating as a business for three years. In April of 1978, SGC obtained a loan from appellee evidenced by a note due 364 days after date. On March 31, 1979, the loan was negotiated and a 45-day renewal note was executed by SGC in favor of appellee. In mid-1979, appellant suffered a series of heart attacks, causing him to be totally disabled for an extended period. During this period, the March 31 note matured and Mr. Boyd Page, the attorney for SGC was authorized to negotiate a repayment plan. On July 10, 1979, Mr. Page presented a three-page letter to appellee setting forth a proposed 30-month payment schedule and stating that "an appropriate power of attorney" would be obtained to execute documents on behalf of appellant. Appellee accepted the proposal on July 11 and, the next day, a general power of attorney was signed by appellant, appointing Mr. Yehuda Smolar to manage his affairs. The following day, Mr. Smolar signed appellant's name to both the corporate note and a personal guaranty. Upon SGC's default, appellee sought to enforce appellant's personal guaranty. On this evidence, the trial court found against appellant and in favor of appellee. Appellant appeals from the judgment entered in favor of appellee.

1. The denial of appellant's motion for summary judgment is moot and will not be considered. *Gosnell v. Waldrip*, 158 Ga. App. 685, 686 (1) (282 SE2d 168) (1981); *Hardaway Constructors v. Browning*, 176 Ga. App. 530 (2) (336 SE2d 579) (1985).

2. The general grounds are the subject of numerous enumerations. These enumerations challenge the authority of Mr. Smolar, act-

ing under the power of attorney, to execute the personal guaranty in the name of appellant.

The record clearly shows that Mr. Smolar was invested by appellant with broad, general powers "to act in, manage and conduct all my affairs, and for that purpose for me and in my name, place, and stead, and for my use and benefit, and as my act and deed, to do and execute, or to concur with persons jointly interested with myself therein in the doing or executing of, all of any of the following acts, deeds, and things . . . [t]o bargain and agree to buy, sell, mortgage, hypothecate, and in any way and every way and manner deal in and with goods, wares, and merchandise, choses in action, and other property in possession or in action, and *to make, do, and transact all and every kind of business of whatsoever nature and kind*; And also for me and in my name, and as my act and deed, to sign, seal, execute, deliver, and acknowledge such deeds, leases, mortgages, hypothecations, bills of lading, bills, bonds, notes, receipts, *evidence of debt*, releases and satisfaction of mortgage, judgments and other debts, and *such other instruments in writing of whatsoever kind and nature as may be necessary or proper in the premises*; GIVING AND GRANTING unto my said attorney full power and authority to do and perform all and every act, deed, matter, and thing whatsoever in and about my estate, property, and affairs set forth above as fully and effectually to all intents and purposes as I might or could do in my own proper person if personally present, *the above especially enumerated powers being in aid and exemplification of the full, complete, and general power herein granted and not in limitation or definition thereof*; and hereby ratifying all that my said attorney shall lawfully do or cause to be done by virtue of these presents." (Emphasis supplied.)

"A power of attorney, like any other contract, must be construed by ascertaining the intention of the parties, and, although the general terms are strictly construed so as to be restricted to consistency with the controlling purpose, they include those things which are usual and necessary to carry out that purpose. [Cit.]" *Flake v. Fulton Nat. Bank*, 146 Ga. App. 40, 42 (245 SE2d 330) (1978). Although appellant urges that the power of attorney was not intended to authorize Mr. Smolar to sign the personal guaranty, appellant knew that the power of attorney was needed in connection with the renegotiated loan that his corporation, SGC, had obtained from appellee. The personal guaranty, signed in connection with that loan, would clearly appear to be such an "evidence of debt" as was within the authority of Mr. Smolar to execute and deliver. See generally *Goldstein v. Ipswich Hosiery Co.*, 104 Ga. App. 500, 514 (16) (122 SE2d 339) (1961). "While an authorization to a person to manage a business . . . would not generally include authority to make unusual or extraordinary contracts

with reference thereto . . . , it would empower him to make such contracts as are incidental to such operation, which are usually made in it, or are reasonably necessary in conducting it. . . . For 'if a person imposes upon another the duties and responsibilities involving the management and control of a business, such person will be presumed to have authority to represent his employer in any matter within the scope of the business.' [Cit.]" *Martin v. McLain*, 51 Ga. App. 336, 338-339 (180 SE 510) (1935). "Where the instructions to an agent are general and he is expected to merely obtain a result, he is only required to act according to his best judgment to that end, within the rule of ordinary care." *Benton v. Roberts*, 35 Ga. App. 749, 750 (7) (134 SE 846) (1926). Mr. Smolar acted within the broad and general powers vested in him by the power of attorney and the evidence is sufficient to support the judgment of the trial court.

3. Appellant enumerates as error the admission into evidence of prior promissory notes evidencing SGC's indebtednesses to appellee, contending that they were not the subject matter of the instant litigation. The record shows, however, that these documents were admitted into evidence without objection from appellant. Accordingly, this enumeration presents nothing for review.

4. The trial court did not err in allowing a witness to testify that appellant had signed personal guaranties of SGC's prior indebtednesses to appellee. The failure to produce the original of such personal guaranties was explained and oral testimony was shown to be the "best" secondary evidence of their existence. See generally OCGA § 24-5-5. Moreover, appellant did not contest the existence of such signed guaranties; he merely did not recall whether he had signed such documents in the past. See generally OCGA § 24-5-25. Contrary to appellant's assertions on appeal, his prior conduct in executing personal guaranties of the indebtedness of SGC to appellee was relevant to the issue of whether Mr. Smolar was authorized to execute the personal guaranty in appellant's name on this occasion. See generally *Planters' & Miners' Bank v. Neel*, 74 Ga. 576 (4) (1885).

5. Appellant contends that there was no evidentiary support for the trial court's finding that he had subsequently ratified Mr. Smolar's act of executing the personal guaranty. However, subsequent ratification by appellant would be relevant to his liability only if Mr. Smolar had lacked initial authority. See generally OCGA § 10-6-52. Since we have held in Division 1 of this opinion that Mr. Smolar had authority to execute the personal guaranty, any question concerning appellant's subsequent ratification of that act is therefore immaterial and need not be considered on appeal. A judgment right for any reason will be affirmed. *Broyles v. Kirkwood Court Apts.*, 97 Ga. App. 384 (103 SE2d 97) (1958).

6. Appellant enumerates error in the trial court's award of attor-

ney fees. Appellant first urges that there was insufficient compliance with OCGA § 13-1-11 (a) (3). However, the letter sent to appellant by appellee in ostensible compliance with OCGA § 13-1-11 was admitted into evidence without objection. "It was incumbent on appellant to challenge any deficiencies in the letter on the trial level. Appellant's failure to do so precludes consideration of this issue. [Cit.]" *Childs v. Liberty Loan Corp.*, 144 Ga. App. 715, 716 (3) (242 SE2d 354) (1978).

Appellant further asserts that the amount of attorney fees awarded was erroneous. The contention in this regard is that the note contained conflicting attorney fees provisions and that the trial court erroneously enforced that which allowed a greater amount of attorney fees. The note provided for financing at 10-1/2 percent interest per annum, "together with the Base Charge and with all costs of collection including *15% as attorneys fees* if collected by law or through an attorney at law. . . ." (Emphasis supplied.) It also provided for "enforcement of rights under any of the Collateral, including *reasonable attorney's fees* and legal expenses." (Emphasis supplied.) These two provisions are not in conflict. They are two entirely separate provisions and the instant suit was not brought to enforce rights of collateral, but to collect the debt due on the note. Thus, the award of attorney fees equal to 15 percent of the amount owed was not erroneous.

7. Appellant enumerates as error the trial court's "allowing" appellee to reopen the evidence and submit documents after the evidence had been closed. The record does not support appellant's assertion that the trial court "allowed" appellee to reopen the evidence. Although the record does show that appellee sent documents to the trial court after the close of the evidence, there is nothing to indicate that the trial court considered those documents. " 'Where a case is tried before a judge without a jury, it is presumed that judgment was rendered only upon the competent and legal evidence before him; consequently, if illegal evidence was admitted, it does not require a new trial.' [Cits.]" *Citizens & Southern Bank v. Morris State Bldg. Corp.*, 243 Ga. 169, 170 (2) (253 SE2d 89) (1979). Accordingly, even assuming that the trial court "admitted" the additional documentary evidence, no grounds for reversal would be presented.

*Judgment affirmed. McMurray, P. J., and Pope, J., concur.*

DECIDED DECEMBER 2, 1986 —
REHEARING DENIED DECEMBER 19, 1986 — 

*Ronald A. Lowry*, for appellant.
*Hansell L. Smith, Brince H. Manning III*, for appellee.