A90A0158. SMOKY, INC. v. McCRAY et al.
(396 SE2d 794)

SOGNIER, Judge.

LeMan McCray and Mary Catherine McCray, as next friends of Julie Ann McCray, brought suit against Smoky, Inc. d/b/a Rocky Pine Ranch to recover damages for injuries incurred by their daughter when she fell off a horse. The jury returned a verdict in favor of the McCrays, and the trial court denied the ranch's motion for a new trial. This appeal ensued.

Evidence at trial established that Julie Ann McCray was taking a riding lesson conducted by Deirdre Dunn in a riding ring at appellant's facility. McCray was circling Dunn on a horse controlled by a longe line held by Dunn. Because the longe line regulated the direction of the horse's movement, McCray was thus able to ride the horse and work on leg strength and balance without touching the reins, although her feet were in the stirrups. Terry Meier, the son of the president of appellant's facility, and two other boys entered the ring with three ponies, which the evidence established were on halters, and moved to the far end of the ring. The evidence sharply conflicted whether one of the ponies thereupon escaped from Terry's control as he was adjusting the saddle stirrups or whether Terry, at the behest of his sister, Karen Meier, released the pony in order to play a trick on an equestrienne also working in the far end of the ring. The pony ran to the other end of the ring, startling McCray's mount. She fell, breaking her arm.

1. Appellant contends the trial court erred by denying its motion for summary judgment made on the basis that an agreement signed by McCray constituted a waiver of all claims against appellant arising out of the use of one of appellant's horses and accordingly barred ap-

pellees' suit against it as a matter of law. Although appellant presented several grounds for its motion for directed verdict, the matter presented here was not included among those enumerated. Thus, as an issue involving the denial of a motion for summary judgment following the jury's verdict and entry of judgment thereon, appellant's enumeration has become moot and will not be considered. *Dedousis v. First Nat. Bank of Cobb County*, 181 Ga. App. 425 (1) (352 SE2d 577) (1986).

2. We find no merit in appellant's contention that the trial court erred by allowing appellees to use the deposition of Deirdre Dunn at trial rather than requiring them to call Dunn as a witness. Counsel for appellees informed the trial court that Dunn was not a resident of Cobb County and was out of the county. Even assuming that the trial court's acceptance of counsel's statement was not sufficient to constitute a finding that Dunn was not available under OCGA § 9-11-32 (a) (3) (B), we find no evidence the trial court abused its discretion in admitting the deposition under OCGA § 9-11-32 (a) (4), which permits, at the discretion of the trial court, the use of a deposition against a party who was present at its taking, even if the witness is available. *Atlanta Coca-Cola Bottling Co. v. Rosser*, 250 Ga. 52, 53-54 (295 SE2d 827) (1982).

3. Appellant asserts numerous errors in the admission by the trial court of hearsay testimony given by Dunn in her deposition. We find meritless appellant's argument that it was error to allow Dunn to testify as to what Karen Meier had told her. Evidence was adduced which established that Karen was employed by appellant and thus her statement to Dunn was admissible under OCGA §§ 24-3-33 and 24-3-34. Compare *Johnston v. Grand Union Co.*, 189 Ga. App. 270 (1) (375 SE2d 249) (1988). Although Dunn's testimony did contain hearsay in the form of statements made to her by Terry Meier regarding the reasons Karen Meier gave him for releasing the ponies into the ring (i.e., to startle the other equestrienne), the same information was elicited from Dunn regarding her subsequent conversation with Karen Meier, and it is well established that proof of the same facts by legally admissible evidence renders harmless a prior admission of incompetent or inadmissible evidence. *In the Interest of D. S.*, 176 Ga. App. 482, 485 (3) (336 SE2d 358) (1985).

4. The trial court refused to admit at trial the agreement signed by Julie Ann McCray, which was tendered by appellant for the sole purpose of enabling the jury to determine whether McCray had waived all claims against appellant. Although the trial court had ruled on the matter when it denied appellant's motion for summary judgment, the trial court took the matter under consideration again at trial. The trial court found that at the time the agreement was executed, McCray was fourteen years old and unaccompanied by any

parent or guardian, and that as a contract by a minor for an item not a "necessary" under OCGA § 13-3-20 (b), the agreement was voidable as a matter of law under OCGA § 13-3-20 (a).

We find no error in the trial court's ruling. "A contract by which an infant [waives] a claim which he may have for damages against another for personal injuries received by the infant is voidable, and may be disaffirmed by the infant. The institution or the maintenance by the infant of a suit against the other contracting party [here, appellant] to recover damages for the injuries sustained by the infant amounts to a disaffirmance by the infant of the contract." *Tharpe v. Cudahy Packing Co.*, 60 Ga. App. 449, 453 (2) (4 SE2d 49) (1939).

The transcript reveals that appellant specifically declined the trial court's suggestion to present any other reason why the agreement would be relevant to the issues at trial. Thus, we will not entertain appellant's argument that the agreement showed that McCray was aware of the potential dangers of horseback riding, since "grounds which may be considered on appeal are limited to those which were urged before the trial court." (Punctuation and citations omitted.) *Carpenter v. Parsons*, 186 Ga. App. 3, 5 (3) (366 SE2d 367) (1988).

5. Appellant contends the trial court erred by refusing to give its requested charge on accident that "if you believe that injury to [McCray] was caused by pure accident and [appellant] and [McCray] were both free of fault, then [appellees] cannot recover." Under appellant's version of the events, Terry Meier did not bring the pony into the ring to play a prank on another rider nor did he deliberately release the pony. Rather, Terry's testimony at trial was that he and two others wanted to ride the ponies, that without negligence on Terry's part his pony pulled away from him after he dismounted to adjust the stirrups, and that when he tried to catch the pony it ran from him to the front part of the ring, where it startled McCray's mount. The evidence thus conflicted as to Terry's intent in introducing the ponies into the ring and as to the manner in which the pony escaped. In view of Dunn's testimony that the ponies were haltered when led into the ring and that she was uncertain whether or not the pony that startled McCray's horse had freed itself from its halter, a jury question was also presented whether the escaping pony had been properly or negligently tackled.

"The defense of accident in this state is to be confined to its strict sense as an occurrence which takes place in the *absence of negligence* and for which *no one would be liable.*" *Chadwick v. Miller*, 169 Ga. App. 338, 344 (1) (312 SE2d 835) (1983). While acknowledging that the above jury questions, if resolved in appellant's favor, would indicate McCray's fall was not the result of negligence on any party's fault, the trial court nevertheless refused to charge the jury on

the theory of accident. The basis for the ruling was the trial court's determination that negligence still existed in the case due to the fact that horses and ponies, regardless of the reason for their presence, were allowed into the ring while riding lessons were being conducted on the longe line. However, at trial appellees presented no evidence that merely allowing other horses and ponies into the ring during riding lessons constituted negligence of any sort. Rather, the testimony of Otto Meier, appellant's president, and Dunn, the riding instructor, indicated that use of the ring by other riders while lessons were being conducted was standard practice, and indeed it appears from the evidence that another equestrienne was working in the ring during McCray's lesson without disturbing Dunn or McCray before Terry and his friends entered with the ponies.

There is no doubt that appellant's requested charge on accident, including the concept that the unexpected event occurred even though both parties were "free of fault," constituted a correct statement of the defense of legal accident. See *Cohran v. Douglasville &c. Prods.*, 153 Ga. App. 8, 10-11 (1) (264 SE2d 507) (1980). Thus, the requested charge was correct, accurate, and adjusted to the law, the evidence in the case, and the basic principle behind appellant's defense. See *Gibbs v. First Fed. &c. Assoc.*, 161 Ga. App. 27 (1) (289 SE2d 1) (1982). "It is the duty of the trial court to charge the jury on the law applicable to the issues where there is any evidence on which to predicate the instructions. [Cits.]" *Feathers v. Wilson*, 157 Ga. App. 753 (1) (278 SE2d 434) (1981). "[A] refusal to give a charge is error if the charge is a correct statement of the law and applicable to the issues involved. [Cit.]" *Department of Transp. v. Hillside Motors*, 192 Ga. App. 637, 641 (5) (385 SE2d 746) (1989). See also *Burson v. Copeland*, 160 Ga. App. 481 (1) (287 SE2d 386) (1981). Given that the charge requested was correct and appropriate, the question thus becomes whether the failure to give this charge was reversible error.

This court has held that failure to give a requested charge on accident is harmless error where a full and fair charge on the general principles of negligence law is given. *Benson v. Hunter*, 184 Ga. App. 40 (360 SE2d 612) (1987); *Glenn McClendon &c. Co. v. Williams*, 183 Ga. App. 508, 511-512 (5) (359 SE2d 351) (1987). It is not enough to distinguish those cases by noting that they involved "considerable question whether [the evidence therein] would be sufficient to authorize a charge on legal accident." *Glenn McClendon &c. Co.*, supra at 511 (5); see *Benson*, supra at 40. Rather, the holding in those cases must be examined to determine whether the rationale therein applies to the case sub judice where the charge given, while covering general negligence principles, never once referenced the word "accident."

In 1965, Sec. 17, Ga. L. 1965, p. 18 (as amended by Ga. L. 1966, pp. 493-498) replaced Ga. Code Ann. § 70-207 (Ga. L. 1853-4, p. 46;

1878-9, p. 150; 1937, p. 592). The former statute had provided that "[i]n any court of record . . . a new trial may be granted when the presiding judge may deliver an erroneous charge to the jury . . . or refuse to give a pertinent legal charge in the language requested, when the charge so requested shall be submitted in writing," and had been restrictively interpreted to mandate the giving of a charge "in the exact language" requested. *Continental Cas. Co. v. Union Camp Corp.*, 230 Ga. 8, 18 (3) (195 SE2d 417) (1973). As a result, in order to avoid reversible error trial courts were required to give "numerous unnecessary and redundant requests" in their instructions to juries. *Gates v. Southern R. Co.*, 118 Ga. App. 201, 203 (3) (a) (162 SE2d 893) (1968).

Relying upon the amendment of the statute (which subsequently became OCGA § 5-5-24), the appellate courts rejected the older case law placing this onerous and impractical requirement on trial courts. See *Gates; Continental Cas. Co.*, supra. However, it is apparent by reading OCGA § 5-5-24 that nothing therein can be construed as requiring the appellate courts to hold as harmless error the trial court's failure to give an apt, legal, and properly requested charge where the general principles behind the charge are "sufficiently covered" elsewhere. In other words, the "sufficiently covered elsewhere" axiom as applied in post-1965 opinions does not derive from the change in the statutory law but rather was promulgated for policy reasons by the appellate courts to abolish the disfavored practice derived from the language of the former statute.

However, while eliminating the burdensome and impractical requirement, the opinions following the amendment failed to resolve the problem, addressed by the Supreme Court in *Werk v. Big Bunker Hill Mining Corp.*, 193 Ga. 217, 225-234 (4) (17 SE2d 825) (1941), presented by two conflicting lines of opinions: On one hand litigants are informed that they cannot object to an abbreviated charge on the law applicable to their case unless they properly present to the trial court legally flawless and factually appropriate instructions, see, e.g., *Royal v. Davis Hauling Co.*, 164 Ga. App. 409, 410 (2) (297 SE2d 333) (1982); *State Mut. Ins. Co. v. Sullens*, 147 Ga. App. 59, 62 (3) (248 SE2d 18) (1978), but on the other hand where the litigant leaps all the hurdles and presents the trial court with a proper charge, litigants' objections that the trial court erred by failing to give the charge are rejected if the principle involved is "adequately covered" elsewhere in the trial court's charges. See, e.g., *American Family Life Assur. Co. v. Queen*, 171 Ga. App. 870, 875 (12) (321 SE2d 750) (1984); *Hill v. Hosp. Auth.*, 137 Ga. App. 633, 640 (5) (224 SE2d 739) (1976). Although as a result of the statutory amendment this court is no longer compelled to require charges be given in the *exact* language of the request (the result reached in *Werk*, supra), neither is this

court compelled by the statutory language in OCGA § 5-5-24 or the cases interpreting it and its post-1965 predecessor to go to the opposite extreme and authorize trial courts to reject useful and illuminating charges designed to aid the jury in arriving at a just and legal verdict merely because the trial court was able to condense the "general principles" involved in the case into a handful of cryptic, terse sentences.

The policy reason behind abandoning the pre-1965 position of giving too many charges does not justify moving to the diametrically opposite extreme of giving too few charges. The days when error was "more likely to exist in a too liberal giving of redundant requests than from the exercising of a restrictive discretion in charging them," *Gates*, supra at 204 (3) (a), are gone and should not be replaced, in true "backlash" fashion, by the proffered version of the "sufficiently covered elsewhere" axiom urged by the dissent, whereby trial courts are encouraged to refuse appropriate clarifying charges researched by the parties most familiar with the unique aspects of a particular case and individualized to address those aspects, and instead to prefer standardized charges, promulgated as general reference materials, which are incapable of reflecting the unique characteristics each lawsuit presents. The encouragement to the trial courts to pare down jury instructions to their most abbreviated form is obvious: the less charged, the better the chance to avoid reversal on appeal. The dissent, by asserting that the "sufficiently covered elsewhere" axiom applies in the case at bar, would reinforce the "less is better" attitude and encourage trial courts to continue a practice which perverts instructions from their true purpose as "full and fair" charges on every aspect of law applicable in a case, see *Benson*, supra, into abstruse summaries of "general principles" presented in their most encapsulated, reversal-proof form.

Case law has now firmly established that "[a] party is not entitled to have all of his requested charges given merely because he requests them." *Lenny's Number Two v. Echols*, 192 Ga. App. 371, 374 (3) (384 SE2d 898) (1989). It is equally well established that it is not error for the trial court to refuse to give a requested charge in the precise language requested where the principles embodied therein are *substantially* covered by the charge. See *Alexie, Inc. v. Old South Bottle Shop Corp.*, 179 Ga. App. 190, 191-192 (1) (345 SE2d 875) (1986). But the learned jurists who comprise the bench in this state must remember that charges are submitted to the jury so that *the jury* can apply the law, and accordingly the proper charges to give are those that materially aid the jury in accomplishing that goal. See *Thompson v. Thompson*, 77 Ga. 692, 698 (2) (3 SE 261) (1887). Thus, in determining whether a requested charge is "substantially covered" by a standardized "general principles" charge, the charge must be re-

viewed from the perspective of the average juror, unschooled in law and hence unable to grasp all the shades and nuances which the law may present in an individual case solely from an abbreviated discussion of the "general principles" involved. Since it is the jury, not the trial court or the appellate courts, that applies the law, the better policy is to tailor charges to it, not to the reviewing courts.

Parties before a trial court research the law and proffer suggested charges in order to expand upon the unique aspects present in the case. "It is only in exceptional instances that the lawyer who is conducting his side of the trial does not know more about that particular case than does the judge. He should, and generally does. It is to be expected that he has thoroughly prepared it, knows the facts, and has devoted his industry to the study of the particular principles of law involved, and their relation and application to the pleadings and the proofs. To the judge, able and experienced though he be, the cause submitted is only one of many on the docket awaiting disposition, as to which he knows nothing of the issues save as they develop on the trial; . . . he may find it more convenient, and he usually does, to instruct the jury only by giving them in charge the general, abstract principles which are involved. That the principle of law embodied in the request may have been covered by the general charge may not always be, even from a practical standpoint, a sufficient answer for a refusal of the request." *Werk*, supra at 233-234 (4).

Appellant's properly requested, correct, pertinent, and apt charge on legal accident was refused by the trial court not because the trial court thought the principles behind such a charge were included in the instructions it intended to charge the jury, but because the trial court erroneously concluded the evidence in the case did not support the giving of the requested charge. As a result of the trial court's erroneous construction of the evidence, a charge was rejected which serves the salutary effect of disabusing jurors of "the charitable though misguided notion that misfortune is itself compensable, regardless of fault." *Benson v. Hunter*, 184 Ga. App. 40, 41 (360 SE2d 612) (1987) (Banke, P. J., dissenting). Keeping in mind that the sufficiency of a charge is weighed from the perspective of the average juror, not the reviewing court, a charge generally discussing duty, breach of duty, and proximate cause cannot be considered to have covered sufficiently the principles behind appellant's requested charge in view of the fact that the charge as given did not once use the word "accident" or otherwise explain how the idea behind "accident" may have been germane in the case sub judice. Furthermore, considering the predilection of juries to award damages merely because a plaintiff has been injured, as discussed by Presiding Judge Banke in his dissent in *Benson*, supra, a charge on accident would seem particularly valuable to insure a jury's fair and impartial consideration of the law applicable

to a case. Therefore, the trial court improperly rejected the requested charge. See generally *Claxton Poultry Co. v. City of Claxton*, 155 Ga. App. 308, 316-317 (9) (271 SE2d 227) (1980).

6. Since there was some evidence adduced at trial from which the jury could have found that an employee of appellant wilfully introduced into the riding ring the loose and uncontrolled pony that startled McCray's mount and caused her to fall, we find no error in the trial court's denial of appellant's motion for a directed verdict. See generally *Leader Nat. Ins. Co. v. Kemp & Son*, 189 Ga. App. 115, 119 (5) (375 SE2d 231) (1988).

7. In view of our holding in Division 5, supra, we need not address appellant's enumeration contending the trial court erred by denying its motion for a new trial based on the excessiveness of the verdict.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Banke, P. J., Birdsong, Beasley and Cooper, JJ., concur. Carley, C. J., Deen, P. J., and Pope, J., dissent.*

CARLEY, Chief Judge, dissenting.

I cannot concur with the majority's reversal of the judgment of the trial court on the basis set forth in Division 5 of the opinion. There is some doubt that the majority is correct in its conclusion that the requested charge was a correct statement of the defense of *legal accident*. See *Cohran v. Douglasville Concrete Prods.*, 153 Ga. App. 8, 10-11 (1) (264 SE2d 507) (1980); *Bush v. Skelton*, 91 Ga. App. 83 (84 SE2d 835) (1954). However, even assuming that the requested charge was a correct statement of that principle, I cannot agree with the majority's conclusion that the trial court committed reversible error in *failing* to give that requested charge.

As recognized by the majority, this Court has previously held that where the trial court otherwise gives a full and fair charge on the general principles of negligence law, the failure to give a request to charge on the defense of legal accident does not authorize reversal of the judgment entered on the verdict. *Benson v. Hunter*, 184 Ga. App. 40 (360 SE2d 612) (1987); *Glenn McClendon &c. v. Williams*, 183 Ga. App. 508 (359 SE2d 351) (1987). Notwithstanding the majority's expansive discussion of the issue, the simple truth of the matter is that *Benson v. Hunter*, supra, is a whole court case and is controlling here unless overruled. OCGA § 15-3-1 (d). As in *Benson*, " '[t]he record in this case shows that the trial court gave a full and fair charge on the general principles of negligence law, instructing the jury that [appellant] could not be found liable in the absence of [appellant's employees'] negligence. In view of the charge as given by the trial court, the failure to give the additional requested charge on the merely "elaborative" defense of legal accident was, at most, harmless error.' [Cit.]"

*Benson v. Hunter*, supra. Either *Benson* is correct and the failure of a trial court to give a requested charge on the merely "elaborative" defense of legal accident *can* be deemed to be harmless error or the majority in the instant case is correct and such a failure can*not* be so deemed. Under the majority's rationale, this case must now be retried because the trial court failed to instruct the jury that there could be no recovery if the injury occurred without being caused by the negligence of either appellees or appellant. However, the trial court's instructions *already* contain a charge to the effect that appellees cannot recover in the absence of negligence on the part of appellant. In my opinion, it defies logic to suggest that the failure to charge this principle *twice* warrants a retrial of this case. As we said in *another* whole court case, "it has long been recognized that [legal accident] is not a separate defense but is merely 'elaborative' of general principles of negligence law. [Cit.]" *Chadwick v. Miller*, 169 Ga. App. 338, 342 (1) (312 SE2d 835) (1983). I believe that *Benson* was correctly decided and that the judgment of the trial court in the instant case should be affirmed. Hopefully, the instant case will provide the Supreme Court with a vehicle for deciding an issue which has now resulted in two diametrically opposing whole court decisions by this court within a three-year period. The question clearly needs final resolution by the Supreme Court since it is apparent that no litigant in this state can have any assurance what this court's answer will be in any given case. For the above reasons, I must respectfully dissent.

I am authorized to state that Presiding Judge Deen and Judge Pope join in this dissent.

DECIDED JULY 31, 1990 —
REHEARING DENIED AUGUST 14, 1990 — CERT. APPLIED FOR.

*Charles J. Vrono*, for appellant.
*Awtrey & Parker, Toby B. Prodgers*, for appellees.