A92A1628. T & M INVESTMENTS, INC. v. JACKSON et al.
(425 SE2d 300)

JOHNSON, Judge.

Robert Jackson was employed by Dusco, Inc., as a security guard

at a shopping mall. Jackson was on a routine patrol in an exterior service bay area ensuring that the back doors to the stores were locked after the mall had closed. Suddenly, he slipped and fell in a large pool of grease which had been thrown out the back door of a McDonald's restaurant instead of being carried across the service area and put in the proper grease disposal receptacle. Jackson sued T & M Investments, Inc., which owned and operated the restaurant.

A jury returned a verdict of $338,830 in favor of Jackson individually, and $18,250 in favor of Jackson as the executor of the estate of Marie Jackson. T & M brings this appeal asserting nine enumerations of error.

1. T & M asserts in its first enumeration of error that the trial court erred in denying its motion for a directed verdict because Jackson was a licensee and there was no evidence that T & M had been wilfully or wantonly negligent.

T & M did not own or occupy the service bay area. T & M had a non-exclusive license to use the service bay area to receive supplies, access trash dumpsters, and deposit grease in designated receptacles. Consequently, general landowner liability theories do not apply. As was the case in *International Paper Realty Co. v. Bethune*, 256 Ga. 54 (344 SE2d 228) (1986), "this case does not turn on the issue of a landowner's liability to invitees, licensees or trespassers who go upon his property and are injured there . . . this case involves a claim against a landowner whose land is immediately adjacent to a public way. Such a landowner may not, without incurring a duty, maintain an artificial condition so situated that persons lawfully using the public way may, by accident or some force not their own fault, fall upon and be injured by the artificial condition. [Cits.] If an artificial condition exists under these circumstances, the landowner owes a duty of due care to guard, cover or protect it for the safety of those on the public way. [Cits.]" Id. at 55. It is clear that the presence of the grease created a dangerous nuisance and T & M did not exercise that duty of ordinary care to guard, cover, or protect it in order to ensure the safety of passersby. Therefore, the court did not err in denying T & M's motion for a directed verdict.

Even if one were to construe the facts of this case to fit the model of landowner liability, T & M would have had an obligation to exercise ordinary care to keep the premises safe. "An owner/occupier has the duty to an invitee to exercise ordinary care to keep premises safe. OCGA § 51-3-1. As to a licensee, however, there is liability only for wilful or wanton injury. OCGA § 51-3-2. The accepted test to determine whether one is an invitee or a licensee is whether the party coming onto the business premises had present business relations with the owner or occupier which would render his presence of mutual benefit to both, or whether his presence was for his own convenience, or was

for business with one other than the owner or occupier." (Citations and punctuation omitted.) *Bishop v. Mangal Bhai Enterprises*, 194 Ga. App. 874, 876 (2) (392 SE2d 535) (1990). T & M benefitted from, and, through the payment of its rent, contributed to the security services provided to the mall by Dusco. Therefore, Jackson was an invitee to whom T & M had a duty to exercise ordinary care to keep the premises safe. Evidence presented at trial established that an employee closing the restaurant simply opened the back door and threw the day's accumulation of grease on the pavement in the service bay area. "It is the duty of a proprietor to protect an invitee from injury caused by the misconduct of employees, customers and third persons if there is any reasonable apprehension of danger from the conduct of said persons or if injury could be prevented by the proprietor through the exercise of ordinary care and diligence." (Citations and punctuation omitted.) *Bishop*, supra at 876 (3). The trial court's refusal to grant a directed verdict in favor of T & M because there was no evidence of wilful or wanton conduct was not error under general landowner liability theories as well.

2. In its second enumeration of error, T & M alleges that the trial court's refusal to instruct the jury on the duty owed a licensee, or to define licensee, was prejudicial error. For the reasons articulated in Division 1 of this opinion, this argument is without merit.

3. Enumeration 3 alleges that the trial court erred in failing to enforce a motion in limine regarding evidence of a subsequent collateral incident. A review of the record indicates that only one witness testified that there could have been a second incident involving grease in the service area. This testimony was offered in direct response to a question concerning other incidents posed by T & M's counsel on cross-examination. "Where counsel elicits testimony unfavorable to his client, he will not be heard to object to it." (Citations and punctuation omitted.) *Tiftarea Shopper v. Maddox*, 187 Ga. App. 227, 228 (2) (369 SE2d 545) (1988). Accordingly, we find no error.

4. T & M asserts that the special damages awarded for lost wages was improper as it was not supported by sufficient evidence to allow the jury to calculate the lost wages with specificity. A review of the record indicates that Jackson testified that he had been earning a salary of $1,260 per month as a security guard. His testimony included his continuous work history, the date upon which he last worked, at age 59, and recounted his unsuccessful efforts to find work. We find that this evidence would permit the jury to calculate the amount of the loss with a reasonable degree of certainty. See *Robert & Co. Assoc. v. Tigner*, 180 Ga. App. 836 (351 SE2d 82) (1986); *Douglas v. Rinker*, 134 Ga. App. 949, 950 (216 SE2d 629) (1975). Further, in determining the amount of lost future earnings, a jury is authorized to consider "all the other vicissitudes of life such as illness and old age.

[Cit.]" *Atlanta Transit System v. Biggs*, 133 Ga. App. 960, 963 (2) (213 SE2d 87) (1975).

5. T & M also asserts that the special damages awarded for future medical expenses was improper as it was not supported by sufficient evidence to allow the jury to calculate the expenses with specificity. Jackson's treating physician testified that he continued to treat Jackson for his injuries and that he recommended that a myelogram and other tests be performed. He stated that Jackson would require continuing physical therapy. He testified that the current cost of an M.R.I. is $650 to $700. This testimony was sufficient to present the issue of future medical expenses to the jury. Since the special damages verdict was not broken down by the jury, we cannot say which portion was attributed to lost wages and which portion to future medical expenses. "The jury is the final arbiter of the facts and the verdict must be construed by the trial and appellate courts in the light most favorable to upholding the jury verdict." (Citations and punctuation omitted.) *Rosequist v. Pratt*, 201 Ga. App. 45, 47 (4) (410 SE2d 316) (1991). We find no error as to this enumeration.

6. T & M, in its sixth enumeration of error, alleges that the award for loss of consortium was improper. At trial, no evidence was presented to establish the date of the death of Jackson's wife, who died during the pendency of the litigation. T & M argues that without that date there was insufficient evidence upon which the jury could base its award. "Damages for loss of consortium, . . . are . . . not capable of exact pecuniary measure and must be left to the enlightened conscience of impartial jurors taking into consideration the nature of services, society, companionship and all the circumstances of the case. (Cit.) [Cit.]" (Punctuation omitted.) *Gurly v. Hinson*, 194 Ga. App. 673, 675 (9) (391 SE2d 483) (1990). However, "the right of consortium exists only during the joint lives of the husband and wife, such evidence is essential to the jury's determination of this issue." *Cody v. Peak*, 113 Ga. App. 676, 677 (2) (149 SE2d 521) (1966). The jury, without the date of death, could not calculate the duration of the "joint lives" for the purpose of fixing the award for loss of consortium. Therefore, the judgment entered on the jury's award of $18,250 to the estate of Marie Jackson must be reversed.

7. T & M cites as error the trial court's refusal to admit medical records from a visit made by Jackson to Dr. Nichols 12 years prior to the incident which forms the basis of this case. T & M argues that OCGA § 24-3-4 permits the admission of statements made for purposes of diagnosis or treatment. Such records are, however, "still subject to the general rule that '(i)f a hospital record contains diagnostic opinions and conclusions, it cannot, upon proper objection, be admitted into evidence unless and until the proper foundation is laid, i.e., the person who entered such diagnostic opinions and conclusions

upon the record must qualify as an expert and relate the facts upon which the entry was based.' [Cits.]" *Stoneridge Properties v. Kuper*, 178 Ga. App. 409, 412 (1) (343 SE2d 424) (1986). Dr. Nichols was not present at the trial and Jackson's admission that he may have seen Dr. Nichols does not constitute a proper foundation for the admission of the office records of that visit. T & M also argues that the document was admissible as a prior inconsistent statement. This argument must also fail. In order for a prior inconsistent statement to be admissible, the witness must deny having made the prior statement. *Pembrook Mgmt. v. Cossaboon*, 157 Ga. App. 675, 677 (3) (278 SE2d 100) (1981). When attempting to lay the foundation for the introduction of the doctor's records, Jackson consistently stated that he did not recall a visit to Dr. Nichols in 1977 and that it was possible that he complained of the problems enumerated by counsel for T & M. This does not constitute a denial which would authorize the admission of the hearsay document as a prior inconsistent statement. The trial court correctly excluded the evidence.

8. The eighth enumeration of error alleges that the trial court made numerous errors with regard to the jury charges. In instructing the jury on the burden of proof in a civil case, the trial court charged as follows: "By a preponderance of the evidence is meant that superior weight of the evidence upon which the issues involved. . . . And in this instance, it's to the Plaintiff's side of the case rather than the Defendant's side of the case." While the final portion of this charge is not part of the pattern instruction, we find that a juror of average intelligence would understand that the judge was attempting to clarify which party had the burden of proof and not infer from this phrase that he believed that the plaintiff actually had a preponderance of the evidence. "Instructions which, when the jury is given credit for ordinary intelligence, are not confusing and prejudicial are not reversible error." (Citations and punctuation omitted.) *Unique Designs v. Pittard Machinery Co.*, 200 Ga. App. 647, 652 (2) (409 SE2d 241) (1991). The remaining allegations of error in the charge state generally that all thirty something charges were incorrect statements of the law and were not warranted and adjusted to the evidence. At trial, counsel for T & M made a blanket objection to the charge. "To be reviewable the objection must be unmistakable in its purport in directing the attention of the trial court to the claimed error and must point out distinctly the portion of the charge challenged. The grounds of error urged must be stated with sufficient particularity to leave no doubt as to the portion of the charge challenged or as to what the specific ground of challenge is. The grounds of error urged must fully apprise the court of the error committed and the correction needed to cure the error." *Georgia Power Co. v. Maddox*, 113 Ga. App. 642 (1) (149 SE2d 393) (1966). General exceptions to a

charge given or general exceptions to refusals to charge fail to meet the requirements of OCGA § 5-5-24. We have reviewed the charges given to the jury in the case in their entirety and they fail to show such harmful error as a matter of law so as to require a reversal pursuant to OCGA § 5-5-24 (c). See *Lissmore v. Kincade*, 188 Ga. App. 548, 550 (4) (373 SE2d 819) (1988); *Black v. Aultman*, 120 Ga. App. 826 (1) (172 SE2d 336) (1969).

9. T & M's final enumeration of error, that the verdict was contrary to the law and evidence is deemed abandoned pursuant to Court of Appeals Rule 15 (c) (2). In its brief, T & M has simply rephrased its enumeration of error without providing guidance as to the basis for this claim and has cited no authority. "The mere repetition and rephrasing of an enumeration of error without more is not the argument anticipated by [Court of Appeals Rule 15 (c) (2)]. 'The principal purpose of argument is to provide guidance to this court on the basis for a claim of error and for citations of authority which tend to support appellant's allegation of error. (Cits.) A mere recital, or repetition, of the enumerated error is not argument. (Cits.)' [Cits.]" *Chesser v. Wallace*, 200 Ga. App. 567, 568 (408 SE2d 814) (1991).

*Judgment affirmed in part, reversed in part. Carley, P. J., and Pope, J., concur.*

Decided October 26, 1992 —
Reconsideration denied November 9, 1992

*Don Smart, Allison K. Luke*, for appellant.
*Jones, Boykin & Associates, H. Gregory Fowler, Robert K. Hardeman*, for appellees.