A07A1619, A08A0136. BARNGROVER et al. v. HINS;
and vice versa.
(657 SE2d 14)

ELLINGTON, Judge.

In July 2000, Connie Hins suffered collapsed lungs and other injuries after a nurse practitioner administered pain medication by injecting it into Hins's back. At the time of Hins's injuries, the nurse was employed by Southeast Regional Pain Center, P.C. (Southeast Regional) under the supervision of Dr. Kenneth Barngrover, D.O. At the conclusion of a medical malpractice trial in Muscogee County State Court, the jury awarded Hins $1.5 million, later reduced to $1.175 million in light of the nurse's settlement payment of $325,000. In Case No. A07A1619, Barngrover and Southeast Regional argue

---

that the trial court erred when it allowed Hins to question Barngrover concerning his Alabama license and when it denied their motion for directed verdict, made on the ground that expert testimony had failed to establish causation. In Case No. A08A0136, Hins argues that the trial court erred when it denied her motion for a supersedeas bond. We affirm the trial court's entry of judgment on the jury's verdict, but reverse and remand on the matter of the supersedeas bond.

### Case No. A07A1619

We review "the judgment entered by the trial court after approval of a jury verdict upon the any evidence test, absent any material error of law." (Citation and punctuation omitted.) *Timmons v. Cook*, 287 Ga. App. 712 (652 SE2d 604) (2007).

So viewed, the record shows that on July 21, 2000, the nurse practitioner was administering pain medication by injection when Hins exclaimed that she could taste the medicine, complained of shortness of breath, and began to cough and spit up blood. Shortly afterward, doctors reinflated one of her lungs, but she suffered bleeding from her chest when a tube dislodged that night, and also developed subcutaneous air pockets on her face that would pop like "Rice Krispies" when she touched them. After 12 days in the hospital, Hins was released, but soon developed post-traumatic stress disorder as well as paranoid fantasies that Barngrover was sending people after her and that poison was being pumped into her home. Hins's employer testified that he held Hins's job as his office manager open for her for a time after her hospitalization, but that she could no longer handle everyday stress and was obsessed with her injuries. After the jury returned a verdict for Hins, the trial court denied the defendants' motion for judgment notwithstanding the verdict or for a new trial.

1. Barngrover and Southeast Regional first argue that the trial court abused its discretion when it allowed Hins to examine Barngrover concerning the status of his Alabama license. We disagree.

"Control of the nature and scope of cross-examination of a witness is a matter within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." *Lattimore v. Dept. of Transp.*, 250 Ga. App. 360, 361 (1) (552 SE2d 439) (2001).

The record shows that Barngrover and Southeast Regional filed a motion in limine to exclude evidence "relating to any investigation, hearing, findings, and disciplinary action" taken by either Georgia or Alabama authorities against Barngrover. The trial court granted the motion, but indicated that it might revisit the question "if an impeachment issue comes up."

In the course of direct examination concerning his licensure, Barngrover testified that he had let his Alabama license expire. At the conclusion of a bench conference, the trial court held that Hins could inquire only about nonrenewal resulting from Barngrover's failure to pay fees, but not about hearings before the Alabama board concerning allegations of fraud and lying under oath. Hins then continued her cross-examination with questions concerning Barngrover's attempts to renew his Alabama license. After Barngrover responded that he "ha[d] not gotten an answer — a final answer" on the question whether Alabama authorities had renewed his license, the trial court ordered Hins to move on.

A witness may be impeached by disproving the facts testified to by him. OCGA § 24-9-82. "While a witness may not be impeached because of a discrepancy as to a wholly immaterial matter, a witness may be impeached on a collateral issue which is indirectly material to the issue in the case." *Lattimore*, 250 Ga. App. at 361 (1). The appellants' motion in limine did not seek the exclusion of *all* evidence concerning Barngrover's Alabama license, but only evidence of investigations and their aftermath, including disciplinary action, concerning that license. Even assuming that the nonrenewal of Barngrover's license resulting from nonpayment of fees was a subject covered by the motion in limine, the trial court did not abuse its discretion when it allowed Hins a limited investigation into whether the Alabama license was renewed after his testimony that he had allowed it to expire.

2. Barngrover and Southeast Regional also contend that the trial court erred when it denied their motion for directed verdict because Hins failed to provide expert medical testimony showing that their negligence was the proximate cause of her psychological distress. Specifically, Barngrover and Southeast Regional argue that the testimony of Dr. Tannahill Glen, a psychologist, was insufficient on that subject. Again, we disagree.

> In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson. Using the specialized knowledge and training of his field, the expert's role is to present to the jury a realistic assessment of the likelihood that the defendant's alleged negligence caused the plaintiff's injury.

(Citations and punctuation omitted.) *Zwiren v. Thompson*, 276 Ga. 498, 500-501 (578 SE2d 862) (2003). "It is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular profession as to entitle him to be deemed prima facie an expert." (Citation omitted.) *Macon-Bibb County Hosp. Auth. v. Whipple*, 182 Ga. App. 195, 196 (1) (355 SE2d 83) (1987); see also *Woodland Partners v. Dept. of Transp.*, 286 Ga. App. 546, 546-547 (1) (a) (650 SE2d 277) (2007). "Generally speaking, nothing more is required to qualify a witness as an expert than to show that, through education, training, or experience, he has special knowledge concerning the matter of science or skill to which his testimony relates." *Queen v. McDaniel*, 178 Ga. App. 504, 505 (343 SE2d 783) (1986).

Glen, who held a doctorate in clinical psychology and was licensed in Georgia and Florida, testified to her experience in diagnosing a wide range of psychiatric disorders. Glen also testified that Hins's bipolar disorder and post-traumatic stress disorder arose from the injection and its aftermath. Specifically, Glen testified that it was "very clear, beyond a reasonable degree of certainty, that the incident in 2000 was associated with the onset of the symptoms," and that "the events of 2000 were the precipitator or the trigger for the onset of symptoms."

In *Macon-Bibb*, we held that a trial court did not abuse its discretion when it allowed a psychologist to testify on the "psychological effect" of intravenous chemotherapy injections on a woman who later died of cancer. See *Macon-Bibb*, 182 Ga. App. at 196 (1). Here, the question whether the pain injections were the proximate cause of Hins's psychological distress was for the jury. See *Jones v. Abel*, 209 Ga. App. 889, 896 (3) (434 SE2d 822) (1993) (weight to be given to psychiatrists' testimony concerning causation of plaintiff's psychological distress was for the jury to determine). It follows that the trial court did not err when it allowed Glen to testify on the psychological suffering caused by the treatment Hins received.

*Case No. A08A0136*

3. In a related and expedited appeal, Hins argues that the trial court erred when it denied her motions for supersedeas bond. We agree.

OCGA § 5-6-46 (a) provides:

In civil cases, the notice of appeal . . . shall serve as supersedeas upon payment of all costs in the trial court by the appellant and it shall not be necessary that a supersedeas bond or other form of security be filed; provided, however,

*that upon motion by the appellee, made in the trial court before or after the appeal is docketed in the appellate court, the trial court shall require that supersedeas bond or other form of security be given with such surety and in such amount as the court may require, conditioned for the satisfaction of the judgment in full, together with costs, interest, and damages for delay if the appeal is found to be frivolous. When the judgment is for the recovery of money not otherwise secured, the amount of the bond . . . shall be fixed at such sum as will cover the whole amount of the judgment remaining unsatisfied, costs on the appeal, interest, and damages for delay, unless the court after notice and hearing and for good cause shown fixes a lesser amount.*

(Emphasis supplied.)

In an order setting a date for the defendants' response to Hins's motion, the trial court ruled that "[s]hould it appear from the motion and the response thereto that a hearing is needed[,] the Court will schedule one." The trial court later denied the motion without a hearing on the ground that there had been "no showing by [Hins] of any financial risk to [her]," and also denied a renewed motion without comment.

As a preliminary matter, we note that the issue of the trial court's denial of a supersedeas bond is not moot. Should Barngrover and Southeast Regional pursue a writ of certiorari concerning Case No. A07A1416, the trial court's denial of a supersedeas bond would remain in effect "pending the final resolution" of that matter. See *Barge v. St. Paul Fire & Marine Ins. Co.*, 245 Ga. App. 112, 116, n. 10 (535 SE2d 837) (2000).

Here, having received a judgment for the recovery of money not otherwise secured, Hins exercised her statutory right to move the trial court for a supersedeas bond, and was under no obligation either to ask for a hearing or to show that Barngrover and Southeast Regional were incapable of satisfying the judgment against them. See *Rapps v. Cooke*, 234 Ga. App. 131, 134 (2) (505 SE2d 566) (1998) (trial court not required to hold hearing before granting motion for supersedeas bond under OCGA § 5-6-46). The trial court, on the other hand, was obligated to require Barngrover and Southeast Regional to post a supersedeas bond in the full amount of the judgment, including costs, interest, and damages, unless, after notice and hearing, it found good cause for fixing a lesser amount. See OCGA § 5-6-46 (a); *Bank South v. Roswell Jeep Eagle*, 200 Ga. App. 489, 489-490 (408 SE2d 503) (1991). Nothing in OCGA § 5-6-46 suggests that a trial court may refuse to require a supersedeas bond posted for the benefit

of an appellee who seeks security for a money judgment, let alone that the trial court could do so without a hearing. See id.

The trial court erred when it denied Hins's motion for a supersedeas bond. We therefore reverse and remand for further proceedings consistent with this opinion.

*Judgment affirmed in Case No. A07A1619. Judgment reversed and case remanded in Case No. A08A0136. Andrews, P. J., and Adams, J., concur.*

DECIDED JANUARY 10, 2008 —
RECONSIDERATION DENIED JANUARY 31, 2008.

*Hall, Booth, Smith & Slover, R. Scott Campbell, Howard W. Reese III*, for appellants.

*Donald W. Johnson, Kenneth T. Dismukes, Jr.*, for appellee.