## A10A1289. SMITH v. CSX TRANSPORTATION, INC.
(703 SE2d 671)

ELLINGTON, Judge.

After Larry Smith slipped and fell on stairs on property owned by CSX Transportation, Inc., he brought this action against CSX in

---

the Superior Court of Gwinnett County under the Federal Employers' Liability Act ("FELA").[1] A jury returned a verdict in favor of CSX. Following the denial of his motion for a new trial, Smith appeals, contending the trial court erred in admitting evidence that, at the time he fell, he was "out of service." In addition, he contends the trial court erred in failing to instruct the jury regarding a federal regulation that requires slip-resistant stair treads and nonslip nosings[2] in the workplace. For the reasons explained below, we reverse.

The evidence shows that Smith was employed as a CSX conductor on April 6, 2004, when he went to the Terminal Administration Building in Walbridge, Ohio to attend a mandatory union safety meeting in his capacity as a local chairman. Smith took interior stairs to reach the second-floor meeting room. Smith's foot slipped as he stepped on a stair tread that had a small puddle of liquid soap on it, and his left knee hit the edge of the step. One year later, Smith had knee surgery.

Smith sued CSX for damages pursuant to FELA, which provides a federal tort remedy for railroad employees who are injured on the job.[3] FELA protects an employee who works for a railroad engaged in interstate commerce and whose duties affect or further the employer's interstate transportation business whenever that employee is working within the scope of his or her employment.[4] Activities within the scope of employment include those that are necessarily incidental to the employment, even if the employee is off duty, but not those undertaken for a private purpose and having no causal relationship with the employment.[5] In order to recover against CSX under FELA, Smith was required to prove, inter alia, that he was protected by FELA at the time of injury; that CSX was negligent in that it breached its duty to exercise reasonable care under the circumstances to provide Smith a reasonably safe place in which to work;

---

[1] 45 USC § 51 et seq.

[2] A nosing is "[t]hat portion of a tread projecting beyond the face of the riser immediately below." 29 CFR § 1910.21 (b) (2).

[3] *Kossman v. Northeast Illinois Regional Commuter R.*, 211 F3d 1031, 1035 (III) (A) (7th Cir. 2000). See *Neal v. CSX Transp.*, 213 Ga. App. 707, 708 (1) (445 SE2d 766) (1994) (Because CSX maintains its registered office and registered agent for service in Gwinnett County, venue of a state court FELA action is proper there.).

[4] *Hardyman v. Norfolk &c. R. Co.*, 243 F3d 255, 258-259 (II) (6th Cir. 2001); *Moore v. Chesapeake &c. R. Co.*, 649 F2d 1004, 1008 (2) (4th Cir. 1981); *Fowler v. Seaboard Coastline R. Co.*, 638 F2d 17, 20 (5th Cir. 1981).

[5] *Rostocki v. Consolidated Rail Corp.*, 19 F3d 104, 106 (2d Cir. 1994); *Baker v. Baltimore &c. R. Co.*, 502 F2d 638, 642 (6th Cir. 1974). See *Fowler v. Seaboard Coastline R. Co.*, 638 F2d at 20 ("[T]he proper test for scope of employment in an FELA case [is] whether the act was one which the employer might reasonably have foreseen and which the employee might reasonably have thought necessary in the interest of or in the benefit of the employer.").

and that CSX's negligence played some part in Smith's injury.[6]

Before trial, Smith moved in limine to exclude any evidence that CSX had disciplined him before the April 2004 incident, arguing that such evidence of bad character was irrelevant to the issue of whether FELA applies to his claim. In particular, Smith sought to exclude any evidence that on April 6, several hours before he slipped on the stairs, two supervisors observed him violate a safety rule and told him that he was "out of service." The trial court granted the motion.

Notwithstanding this ruling, CSX argued, in its opening statement, that

> Smith should not have been there that morning. He had been taken out of service just hours before . . . by company officials who told him, "You're out of service," which he knows means you're not allowed to come on company property. So he should not have even been there.

On cross-examination, CSX's counsel asked Smith whether being out of service means that the employee cannot go onto CSX property without permission. Smith responded that it does not mean that. Counsel then asked whether it was Smith's contention that he was not taken out of service on April 6. Smith affirmatively testified that "[he] was not taken out of service" that morning. CSX's counsel then asked Smith whether, hours before the safety meeting, two supervisors, Jim Horner and Justin Forro, told him that they had seen him dismount moving equipment, a safety rule violation. Smith admitted that they had, but testified that they did not tell him that he was out of service. In addition, he testified that they lacked the authority to take him out of service.

At the beginning of CSX's case-in-chief, Smith moved to prohibit CSX from presenting at trial the deposition testimony of Horner and Forro. The trial court denied the motion and allowed the testimony. Employing a general verdict form, the jury found in favor of CSX.

1. Smith contends that the question of whether, at the time of injury, an employee was working in the course of his employment in interstate commerce is a question of law for the court. Further, he contends that, even if he had been taken out of service on the day he slipped, the evidence established, as a matter of law, that he was furthering CSX's business in interstate commerce by attending the mandatory safety meeting as a local union chairman and, therefore, he is entitled to the protections of FELA. As a result, he contends, evidence that he had been taken out of service was irrelevant to any

---

[6] *Hardyman v. Norfolk &c. R. Co.*, 243 F3d at 258-259 (II); *Kossman v. Northeast Illinois Regional Commuter R.*, 211 F3d at 1035-1036 (III) (A).

issue to be decided by the jury, and the trial court erred in admitting it. Smith contends that evidence that he committed a serious safety rule violation reflected poorly on his character and credibility and, therefore, that the trial court's error prejudiced him.[7] "We review a trial court's decisions on the admissibility of evidence under an abuse of discretion standard." (Citation and punctuation omitted.) *Fuller v. Flash Foods*, 298 Ga. App. 217, 220 (2) (679 SE2d 775) (2009).

As noted above, the trial court granted Smith's motion in limine, ruling inadmissible any evidence that CSX had disciplined Smith, including evidence that hours before he slipped on the stairs on April 6, 2004, Horner and Forro told him that he was "out of service" because they had observed him violating a safety rule. When CSX's counsel asked Smith whether he had been taken out of service that morning, however, Smith's counsel delayed his objection to that line of questioning until after Smith affirmatively testified that Horner and Forro did not tell him that he was out of service on April 6. Under Georgia law, "[a] witness may be impeached by disproving the facts testified to by him [or her]." OCGA § 24-9-82. Although a witness may not be impeached by disproving facts that are "wholly immaterial" to the matters at issue in the case, a witness may be impeached on a collateral issue which is "indirectly material" to the matters at issue. (Citation and punctuation omitted.) *Barngrover v. Hins*, 289 Ga. App. 410, 412 (1) (657 SE2d 14) (2008).

We conclude that the circumstances surrounding Smith's dispute with Horner and Forro a few hours before Smith went to the administration building to attend the safety meeting were at least indirectly material to matters at issue in this case, including whether Smith was acting within the scope of his employment when he fell. Although the favorable ruling on Smith's motion in limine did not require him to object to evidence encompassed by his motion,[8] we conclude that, once Smith submitted to questioning on the issue without seeking to enforce the limine ruling, he opened the door to being impeached with evidence that tended to disprove his testimony. Accordingly, the trial court did not abuse its discretion in allowing CSX to cross-examine Smith on the issue and in admitting the testimony of Horner and Forro for purposes of disproving certain

---

[7] Although we have concluded that Smith is entitled to a new trial for the reasons explained in Division 2, infra, this evidentiary issue may recur and, therefore, we address this claim of error here.

[8] See *Reno v. Reno*, 249 Ga. 855, 855-856 (1) (295 SE2d 94) (1982) (Where a trial court grants a motion in limine to exclude certain evidence, and the nonmovant violates the order by nevertheless offering evidence encompassed by the motion in limine, the movant need not object in order to preserve the issue for appellate review.); *Scott v. Chapman*, 203 Ga. App. 58, 59 (1) (416 SE2d 111) (1992) (accord).

facts to which Smith had testified. *Morris v. State Farm &c. Ins. Co.*, 203 Ga. App. 839, 842 (9) (418 SE2d 119) (1992); *Swift & Co. v. Lawson*, 95 Ga. App. 35, 54-57 (6) (97 SE2d 168) (1957).

2. Smith contends the trial court erred in failing to instruct the jury, as he requested, regarding a regulation issued by the federal Occupational Safety and Health Administration ("OSHA") that requires that stair treads be reasonably slip-resistant and that the nosings have a nonslip finish.[9] "A requested charge should be given where it has been raised by the evidence, embraces a correct and complete principle of law, has not been substantially included in the general instructions given, and is specifically adjusted to the evidence." (Citation and punctuation omitted.) *State Farm v. Nelson*, 296 Ga. App. 47, 49 (2) (673 SE2d 588) (2009).[10]

> It is the duty of the trial court to charge the jury on the law applicable to the issues where there is any evidence on which to predicate the instructions. A refusal to give a [requested] charge is error if the charge is a correct statement of the law and applicable to the issues involved.

(Citations and punctuation omitted.) *Blankenship v. West Ga. Plumbing Supply*, 213 Ga. App. 275, 277 (444 SE2d 596) (1994).

Generally, evidence of noncompliance with OSHA regulations is admissible as evidence of an employer's negligence.[11] In this case,

---

[9] In full, Smith requested the following charge:
Plaintiff contends the Defendant Railroad did not comply with OSHA 29 CFR § 1910.24 (f), which demands,
> Stair treads. All treads shall be reasonably slip-resistant and the nosings shall be of nonslip finish. Welded bar grating treads without nosings are acceptable providing the leading edge can be readily identified by personnel descending the stairway and provided the tread is serrated or is of definite nonslip design. Rise height and tread width shall be uniform throughout any flight of stairs including any foundation structure used as one or more treads of the stairs.
I charge you that . . . if you believe from the evidence that the Defendant Railroad violated this regulation, then you may consider this violation as evidence of negligence on the part of the Defendant Railroad and a failure of the Defendant Railroad to provide a reasonably safe place to work.

[10] See *Smoky, Inc. v. McCray*, 196 Ga. App. 650, 655-656 (5) (396 SE2d 794) (1990) (Although "it is not error for the trial court to refuse to give a requested charge in the precise language requested where the principles embodied therein are substantially covered by the charge[,]" the issue of whether a requested charge is substantially covered by a standardized charge of the general principles involved should be evaluated "from the perspective of the average juror, unschooled in law and hence unable to grasp all the shades and nuances which the law may present in an individual case solely from an abbreviated discussion of the 'general principles' involved[, because] it is the jury, not the trial court or the appellate courts, that applies the law[.]") (citations, punctuation and emphasis omitted).

[11] *Dupree v. Keller Indus.*, 199 Ga. App. 138, 141 (1) (404 SE2d 291) (1991) ("OSHA regulations are admissible not merely as standards of performance, but as evidence of legal

Smith presented evidence that the nosings on the stairs in the CSX administration building where he fell were not of a nonslip finish[12] and that, together with the soap spill, the nosings' finish caused his fall.[13] The trial court refused to give the requested charge, however, based on its conclusion that 29 CFR § 1910.24 does not apply to the type of building in which Smith fell, that is, an office building. This was error. OSHA's general standards, which are set out in 29 CFR Part 1910, apply to any workplace, unless specifically excepted. 29 CFR § 1910.5 (a). See also 29 CFR § 1910.5 (c) (2). The jury instruction Smith requested is drawn from 29 CFR § 1910.24, which "contains specifications for the safe design and construction of fixed general industrial stairs." 29 CFR § 1910.24 (a). In the context of 29 CFR Part 1910, the modifier "general industry" or "general industrial" plainly denotes that the standard has general application to any workplace and is not limited to certain industries that are subject to additional, particularized standards.[14] Subpart D, which provides standards for "walking-working surfaces," is such a general standard. Further, the office building in which Smith fell does not fall under an exception. See 29 CFR § 1910.5 (b). It follows that the standards for the construction of stairs provided in 29 CFR § 1910.24 apply to the building in which Smith fell.

---

duty, violation of which may give a cause of action under OCGA § 51-1-6.") (citation and punctuation omitted); *Cardin v. Telfair Acres of Lowndes County*, 195 Ga. App. 449, 450 (2) (393 SE2d 731) (1990) (accord); *Ries v. Nat. R. Passenger Corp.*, 960 F2d 1156, 1165 (III) (3d Cir. 1992) (Although "OSHA is not a safety statute under the FELA, [and, therefore,] a violation of an OSHA regulation could not constitute negligence per se and bar contributory negligence[, . . . the defendant employer's] violation of [an] OSHA regulation was properly admissible as evidence of [the employer's] negligence[.]"). We note that some state and federal courts have determined that a violation of an OSHA regulation may constitute negligence per se. See, e.g., *Pratico v. Portland Terminal Co.*, 783 F2d 255, 265-267 (IV) (1st Cir. 1985) ("[A] violation of an OSHA regulation can be considered negligence per se [when] there [is] an independent cause of action established by either state or federal law which establishes the right of an employee to be free from negligence, the duty of the employer to take reasonable precautions, and the liability of the employer for injuries caused by the failure to take reasonable precautions."); see also John P. Ludington, "Violation of OSHA regulation as affecting tort liability," 79 ALR3d 962 (1977, updated weekly).

[12] One witness testified that the nosings were "vinyl" and "slippery"; another testified that they were smooth vinyl; and Smith testified that they were smooth and not covered in slip-resistant material.

[13] Smith testified that, if the nosing had been made of a different material, he would not have fallen "because the edging would've caught [his] boots."

[14] See, e.g., construction, in 29 CFR § 1910.12; shipyards, in 29 CFR § 1910.15; longshoring and marine terminals, in 29 CFR § 1910.16; paper mills, in 29 CFR § 1910.261; electric power plants, in 29 CFR § 1910.269; etc.); see also 29 CFR § 1910.5 (c) (providing for circumstances when a particular OSHA standard preempts a general standard); *Brock v. Williams Enterprises*, 832 F2d 567, 570 (II) (A) (11th Cir. 1987) ("A general standard setting forth measures that an employer must take to protect employees from a particular hazard is not preempted by a specific standard unless that specific standard addresses the same particular hazard as the general standard.") (citation omitted).

Because the evidence presented issues for the jury to resolve regarding whether CSX violated 29 CFR § 1910.24 (f) and, in so doing, negligently caused Smith's injuries, and because the principles were not otherwise covered in the trial court's charge, the trial court erred in refusing Smith's request to instruct the jury on the requirements of that regulation in relation to their consideration of Smith's FELA claim. *Blankenship v. West Ga. Plumbing Supply*, 213 Ga. App. at 277 (The trial court's failure to give a requested charge on a critical legal theory of recovery constituted substantial error and was harmful as a matter of law.). See *Robertson v. Burlington Northern R. Co.*, 32 F3d 408, 410-411 (I) (9th Cir. 1994) (the trial court properly admitted into evidence an OSHA noise-level regulation as some evidence of the applicable standard of care in a FELA action and instructed the jury to consider the regulation in relation to all other evidence in the case); *Albrecht v. Baltimore &c. R. Co.*, 808 F2d 329, 332 (4th Cir. 1987) (the trial court correctly charged the jury regarding OSHA regulations that the employee alleged the employer had violated, which the jury could consider as some evidence of negligence).

*Judgment reversed. Miller, C. J., and Phipps, P. J., concur. Barnes, P. J., concurs and concurs specially. Andrews, P. J., Johnson and Doyle, JJ., dissent.*

BARNES, Presiding Judge, concurring specially.

Although I concur fully in Division 2 and the judgment of the majority opinion, I cannot concur in Division 1.[15] The statement that "once Smith submitted to questioning on the issue [of whether he was "out of service"] without seeking to enforce the limine ruling, he opened the door to being impeached with evidence that tended to disprove his testimony" places an obligation upon Smith which does not exist in our law.

In *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 285 (1), n. 1 (260 SE2d 20) (1979), our Supreme Court held that no objection is necessary at trial to preserve the denial of the motion in limine for appeal:

The purpose in filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the

---

[15] There being no majority concurring in Division 1, it may not be cited as binding precedent. Court of Appeals Rule 33 (a).

issues in the case or on the rights of the parties to the suit. It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which the motion in limine is intended to reach.

(Citation and punctuation omitted.)

Our Supreme Court later made clear that this reasoning also applies when a motion in limine is granted.

To hold otherwise, and require the successful movant to object when evidence encompassed by the motion in limine is nevertheless offered at trial, would defeat the purpose of the motion in limine, as the movant would be forced, in the presence of the jury, to call special attention to prejudicial evidence which the trial court had previously ordered to be excluded from the jury's consideration.

*Reno v. Reno*, 249 Ga. 855, 856 (1) (295 SE2d 94) (1982). Therefore, Smith was not required to seek to "enforce the limine ruling" and his failing to object or otherwise seek to enforce the grant of his motion could not open the door to the questioning by CSX.

Accordingly, I concur fully in Division 2 and the judgment of the majority opinion, but not in Division 1.

ANDREWS, Presiding Judge, dissenting.

Larry Smith brought a slip and fall claim against his employer, CSX Transportation, Inc., seeking damages under the Federal Employer's Liability Act (FELA). On appeal from the judgment entered on the jury verdict rendered against his claim, he enumerates two errors, neither of which has merit.

First, he claims: "The trial court erred in allowing the jury to hear evidence of, and determine whether, Plaintiff was out of service because, as a matter of law Plaintiff was within the broad scope of protection of the FELA, 45 U. S. C. § 51 et seq." Smith complains that the trial court erred by allowing evidence to be introduced at trial about whether or not CSX had placed him "out of service" — in other words relieved him of his work duties — at the time of his slip and fall injury on stairs located in a CSX office building. He contends that, at the time of his injury, evidence showed as a matter of law that he was covered by FELA, and that evidence regarding whether he was "out of service" may have erroneously caused the jury to find that he was not covered by FELA.

Prior to trial, Smith filed a motion in limine seeking to exclude evidence of "past railroad discipline" against him, one example of

which was evidence that, the day prior to his injury, CSX claimed to have placed him "out of service" because he violated a rule related to his employment. Although the trial court granted the motion in limine, Smith introduced evidence in his case-in-chief raising the issue of whether he had been placed "out of service" by CSX, and whether "out of service" meant that he was prohibited from going on CSX property, or was prohibited from attending the union safety meeting on CSX property at which he was injured. Prior to introducing this evidence, Smith's counsel engaged in colloquy with the trial judge over the scope of the judge's ruling on the motion in limine. Smith's counsel stated that, "I think what we discussed in the motions in limine is that the specific discipline was not relevant to what happened. . . . What's relevant is they claim they took him out of service, and that's fine. They can argue that we saw him violating a rule and took him out of service." Thereafter, Smith testified on direct examination about the "out of service" issue, including testimony that no one at CSX told him he was "out of service," and that, even if he had been "out of service," that did not affect his right to be engaged in a work-related activity in the CSX office building by attending the union safety meeting at which he was injured. When defense counsel cross-examined Smith on this testimony, Smith's counsel objected on the basis that the "out of service" issue was not relevant. The trial court properly overruled the objection. Given his counsel's concession about the scope of the motion in limine ruling, and the testimony Smith himself gave on the "out of service" issue, Smith cannot complain that the trial court erred by allowing CSX to cross-examine him and present evidence concerning this issue. *Bd. of Regents &c. v. Ambati*, 299 Ga. App. 804, 808 (685 SE2d 719) (2009); *T & M Investments v. Jackson*, 206 Ga. App. 218, 220 (425 SE2d 300) (1992).

Second, Smith claims that the trial court erred by refusing to give the following jury charge:

> Plaintiff contends the Defendant Railroad did not comply with O. S. H. A. 29 C. F. R. 1910.24 (f), which demands, "Stair treads. All treads shall be reasonably slip-resistant and the nosings shall be of nonslip finish. Welded bar grating treads without nosings are acceptable providing the leading edge can be readily identified by personnel descending the stairway and provided the tread is serrated or is of definite nonslip design. Rise height and tread width shall be uniform throughout any flight of stairs including any foundation structure used as one or more treads of the stairs."

> I charge you that if you believe from the evidence that the Defendant Railroad violated this regulation, then you

may consider this violation as evidence of negligence on the part of the Defendant Railroad and a failure of the Defendant Railroad to provide a reasonably safe place to work.

The above request to charge was based on Smith's contention that the stairs on which he slipped and fell, located in a CSX office building, were governed by subsection (f) of the Occupational Safety and Health Act (OSHA) standard entitled "Fixed industrial stairs" set forth in 29 CFR § 1910.24, and that CSX's violation of this standard was evidence of its negligence.

> OSHA standards may be categorized into four broad subject areas: General Industry Standards [in 29 CFR Part 1910]; Maritime and Longshoring Standards [in 29 CFR Parts 1915 and 1918]; Construction Standards [in 29 CFR Part 1926]; and Agricultural Standards [in 29 CFR Part 1928].

Mark A. Rothstein, Occupational Safety and Health Law, § 4:1 (West 2009). 29 CFR § 1910.24 is found in a subpart of the General Industry Standards titled "Subpart D: Walking-Working Surfaces," set forth in 29 CFR §§ 1910.21 to 1910.30. The complete OSHA standard for "Fixed industrial stairs" is set forth in 29 CFR § 1910.24 subsections (a) through (i) and provides the following:

> (a) Application of requirements. This section contains specifications for the safe design and construction of fixed general industrial stairs. This classification includes interior and exterior stairs around machinery, tanks, and other equipment, and stairs leading to or from floors, platforms, or pits. This section does not apply to stairs used for fire exit purposes, to construction operations to private residences, or to articulated stairs, such as may be installed on floating roof tanks or on dock facilities, the angle of which changes with the rise and fall of the base support.
>
> (b) Where fixed stairs are required. Fixed stairs shall be provided for access from one structure level to another where operations necessitate regular travel between levels, and for access to operating platforms at any equipment which requires attention routinely during operations. Fixed stairs shall also be provided where access to elevations is daily or at each shift for such purposes as gauging, inspection, regular maintenance, etc., where such work may expose employees to acids, caustics, gases, or other harmful substances, or for which purposes the carrying of tools or

equipment by hand is normally required. (It is not the intent of this section to preclude the use of fixed ladders for access to elevated tanks, towers, and similar structures, overhead traveling cranes, etc., where the use of fixed ladders is common practice.) Spiral stairways shall not be permitted except for special limited usage and secondary access situations where it is not practical to provide a conventional stairway. Winding stairways may be installed on tanks and similar round structures where the diameter of the structure is not less than five (5) feet.

(c) Stair strength. Fixed stairways shall be designed and constructed to carry a load of five times the normal live load anticipated but never of less strength than to carry safely a moving concentrated load of 1,000 pounds.

(d) Stair width. Fixed stairways shall have a minimum width of 22 inches.

(e) Angle of stairway rise. Fixed stairs shall be installed at angles to the horizontal of between 30 (degrees) and 50 (degrees). Any uniform combination of rise/tread dimensions may be used that will result in a stairway at an angle to the horizontal within the permissible range. Table D-1 gives rise/tread dimensions which will produce a stairway within the permissible range, stating the angle to the horizontal produced by each combination. However, the rise/tread combinations are not limited to those given in Table D-1.

[Table D-1 omitted]

(f) Stair treads. All treads shall be reasonably slip-resistant and the nosings shall be of nonslip finish. Welded bar grating treads without nosings are acceptable providing the leading edge can be readily identified by personnel descending the stairway and provided the tread is serrated or is of definite nonslip design. Rise height and tread width shall be uniform throughout any flight of stairs including any foundation structure used as one or more treads of the stairs.

(g) Stairway platforms. Stairway platforms shall be no less than the width of a stairway and a minimum of 30 inches in length measured in the direction of travel.

(h) Railings and handrails. Standard railings shall be provided on the open sides of all exposed stairways and stair platforms. Handrails shall be provided on at least one side of closed stairways preferably on the right side descending.

> Stair railings and handrails shall be installed in accordance with the provisions of § 1910.23.[16]
>
> (i) Vertical clearance. Vertical clearance above any stair tread to an overhead obstruction shall be at least 7 feet measured from the leading edge of the tread.

"In determining the application of a standard, the wording of the standard must be interpreted in a reasonable manner, consistent with common sense understanding. The words in a standard are to be viewed in context, not in isolation, and judged in light of its application to the facts of the case." (Citation omitted.) *Secretary of Labor v. Spirit Homes*, 2002 WL 31163770, *7 (OSHRC,[17] Docket Nos. 00-1807; 00-1808, ALJ, Sept. 30, 2002). The OSHA standard for "Fixed industrial stairs" is part of the OSHA standards regulating General Industry in 29 CFR Part 1910. CSX operates in the railroad industry in interstate commerce and is subject to OSHA, the purpose of which is

> to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources . . . by encouraging employers and employees in their efforts to reduce the number of occupational safety and health hazards at their places of employment [and] by authorizing the Secretary of Labor to set mandatory occupational safety and health standards applicable to businesses. . . .

29 USC § 651 (b) (1), (3); *Southern Pacific Transp. Co. v. Usery*, 539 F2d 386 (5th Cir. 1976). The OSHA standard at 29 CFR § 1910.24 advances this purpose by requiring specialized design and construction specifications for "Fixed industrial stairs" to protect employees whose occupations expose them to recognizable industrial hazards in the workplace. Undoubtedly, parts of CSX's railroad business subjects employees to industrial hazards which the "Fixed industrial stairs" standard is intended to protect against. But the injury in this case occurred when Smith slipped on stairs located in a CSX administration office building. There was no evidence that any industrial hazard existed at the office building that would have required CSX to construct "Fixed industrial stairs" to the specifica-

---

[16] 29 CFR § 1910.23 (d) contains general standards for stairway railings and guards.

[17] The Occupational Safety and Health Review Commission (OSHRC) is the body charged with adjudicating citations issued by the Secretary of Labor under OSHA. *Indus. Union Dept., AFL-CIO v. American Petroleum Institute*, 448 U. S. 607, 683 (100 SC 2844, 65 LE2d 1010) (1980) (Rehnquist, J., concurring).

tions set forth in 29 CFR § 1910.24 in order to protect its employees from those hazards. See *Secretary of Labor v. Williams & Davis Boilers, Inc.*, 1980 WL 10408, *11 (OSHRC, Docket No. 79-3817, ALJ, Sept. 19, 1980) (finding that stairs leading to an office and stockroom at a business were "ordinary building stairs" governed not by "Fixed industrial stairs" requirements but by general stairway standards in 29 CFR § 1910.23 (d)). There was also no evidence that CSX was cited for violation of the OSHA standard for "Fixed industrial stairs." Viewed in context, common sense dictates that the OSHA standard for "Fixed industrial stairs" did not apply to the facts of this case, and that the trial judge correctly refused to give the requested jury charge. I respectfully dissent.

I am authorized to state that Judge Johnson and Judge Doyle join in this dissent.

DECIDED OCTOBER 25, 2010 —
RECONSIDERATION DENIED NOVEMBER 23, 2010 — 

*Michael J. Warshauer, Douglas C. Dumont*, for appellant.
*Casey Gilson, James E. Gilson, Karen R. Dunbar*, for appellee.