S11G0556. CSX TRANSPORTATION, INC. v. SMITH.
(717 SE2d 209)

CARLEY, Presiding Justice.

CSX Transportation, Inc., which is a railroad involved in interstate commerce, employed Larry Smith as a conductor. On April 6, 2004, two supervisors allegedly observed Smith violate a safety rule by dismounting a moving train and subsequently removed him from service pending further investigation. Several hours later, Smith entered CSX's Terminal Administration Building in Walbridge, Ohio and was walking up a flight of stairs on his way to a union safety meeting when he slipped and hit his knee on the edge of a step. A small puddle of liquid soap was later found on the stair tread. Smith had knee surgery one year later.

In 2007, Smith brought suit against CSX in the Superior Court of Gwinnett County under the Federal Employers' Liability Act (FELA), which provides a federal tort remedy for interstate railroad employees who are injured while working within the scope of their employment. See 45 USC § 51 et seq.; *Eubanks v. CSX Transp.*, 223 Ga. App. 616, 617 (1) (478 SE2d 387) (1996). Smith moved in limine to exclude as irrelevant any evidence of past discipline by CSX, including the incident before his fall which allegedly caused two supervisors to advise him that he was "out of service." The trial court granted that motion. At trial, the jury returned a verdict in favor of CSX, and the trial court entered judgment thereon.

The Court of Appeals reversed because the trial court refused Smith's request to instruct the jury regarding a federal Occupational Safety and Health Administration (OSHA) stair regulation requiring that "[a]ll treads shall be reasonably slip-resistant and the nosings shall be of nonslip finish." 29 CFR § 1910.24 (f). *Smith v. CSX Transp.*, 306 Ga. App. 897, 901-903 (2) (703 SE2d 671) (2010) (four judges fully concurred in this division). The Court of Appeals also concluded that, because of Smith's own actions, the trial court did not err in allowing CSX to cross-examine him regarding whether he had been taken "out of service" before his fall and to present evidence concerning this issue. *Smith v. CSX Transp.*, supra at 899-901 (1) (plurality), 904-905 (Andrews, P. J., dissenting, joined by two other judges). Presiding Judge Barnes concurred specially on the ground that Smith's failure to object or otherwise seek enforcement of the ruling on the motion in limine "could not open the door to the

questioning by CSX." *Smith v. CSX Transp.*, supra at 904. Presiding Judge Andrews and two other judges dissented with respect to the jury charge issue. We granted certiorari to consider both issues raised in the Court of Appeals.

1. CSX contends that 29 CFR § 1910.24 (f) does not apply to an indoor office building. CSX makes no assertion that this regulation does not generally apply to railroads, nor does it dispute the Court of Appeals' determination that evidence of an applicable OSHA regulation is admissible as evidence of a railroad's negligence. *Smith v. CSX Transp.*, supra at 901-902 (2), fn. 11 (citing *Ries v. Nat. R. Passenger Corp.*, 960 F2d 1156, 1165 (III) (3d Cir. 1992)).

Pursuant to the Occupational Safety and Health Act of 1970, the Secretary of Labor has issued two types of safety and health standards. "The first, known as the 'general industry standards,' see 29 C.F.R. pt. 1910, act as a default set of standards." *CH2M Hill v. Herman*, 192 F3d 711, 717 (II) (7th Cir. 1999). As the Court of Appeals correctly held, those "general standards, which are set out in 29 CFR Part 1910, apply to any workplace, unless specifically excepted. 29 CFR § 1910.5 (a). See also 29 CFR § 1910.5 (c) (2)." *Smith v. CSX Transp.*, supra at 902 (2). See also 29 USC § 653 (a). The general industry standards "are binding upon employers engaged in businesses affecting commerce. [Cit.]" *Commissioner of Labor v. Gary Steel Products Corp.*, 643 NE2d 407, 413 (Ind. App. 1994). "In addition, the Secretary has presented various industry-specific standards" which may specifically preempt the general standards. *CH2M Hill v. Herman*, supra. See also *Commissioner of Labor v. Gary Steel Products Corp.*, supra. The Secretary of Labor has not promulgated any standards specific to the railroad industry.

However, OSHA regulations are inapplicable "to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health." 29 USC § 653 (b) (1). Consistent with this directive, the Federal Railroad Administration (FRA) in 1978 issued a policy "statement indicating which aspects of the railroad industry fall under the exclusive jurisdiction of the FRA, thereby displacing applicable OSHA regulations." *Velasquez v. Southern Pacific Transp. Co.*, 734 F2d 216, 218 (5th Cir. 1984). See also *Callahan v. Nat. R. Passenger Corp.*, 979 A2d 866, 872 (Pa. Super. 2009). The Occupational Safety and Health Review Commission (Commission) itself views that policy statement as a proper exercise of the statutory authority set forth in 29 USC § 653 (b) (1) and defers to the statement with respect to which matters are appropriate for OSHA regulation on an industry-wide basis. *Secretary of Labor v. Consolidated Rail Corp.*, 16 O.S.H. Cas. (BNA) 1033 (1993 O.S.H. Dec. ¶ 30012) (O.S.H.R.C. 1993); *Secretary of Labor v. Consolidated Rail*

*Corp.*, 10 O.S.H. Cas. (BNA) 1577 (1982 O.S.H. Dec. (CCH) ¶ 26044) (O.S.H.R.C. 1982).

The FRA policy statement "recognizes that OSHA has application to 'the occupational safety and health of railroad employee(s).' Policy Statement, 43 Fed. Reg. 10,583, 10,585 (March 14, 1978)." *Callahan v. Nat. R. Passenger Corp.*, supra. In the statement, the FRA "delegated jurisdiction to [OSHA] for safety pertaining to 'railroad yards, shops *and associated offices* . . . with respect to conditions not rooted in nor so closely related to railroad operations.' [Cit.]" (Emphasis supplied.) *Ries v. Nat. R. Passenger Corp.*, supra at 1164 (II) (C) (quoting 43 Fed. Reg., supra at 10,587). Furthermore,

> [t]he policy statement provides that "OSHA regulations concerning working surfaces deal with such matters as ladders, *stairways*, platforms, scaffolds and floor openings. Generally, these regulations are applicable in *railroad offices*, shops and other fixed work places." [Cit.] (Emphasis supplied.)

*Ledbetter v. Mo. Pacific R. Co.*, 12 SW3d 139, 142 (Tex. App. 1999) (quoting 43 Fed. Reg., supra). Although the FRA's statement does describe three exceptions to this rule, none of those exceptions is applicable here. *Ledbetter v. Mo. Pacific R. Co.*, supra at 143; 43 Fed. Reg., supra. See also *Callahan v. Nat. R. Passenger Corp.*, supra at 873. Compare *Velasquez v. Southern Pacific Transp. Co.*, supra.

In accordance with the FRA policy statement, we hold that the OSHA stairway regulations in 29 CFR § 1910.24 apply to railroad office buildings. Moreover, as our discussion above should make clear, the Court of Appeals correctly held that,

> [i]n the context of 29 CFR Part 1910, the modifier "general industry" or "general industrial" plainly denotes that the standard has general application to any workplace and is not limited to certain industries that are subject to additional, particularized standards. [Cits.] Subpart D, which provides standards for "walking-working surfaces," is such a general standard.

*Smith v. CSX Transp.*, supra. Therefore, we are not persuaded by the apparently contrary decision of an administrative law judge, upon which CSX relies, that preceded the Commission's 1982 recognition of the FRA policy statement and that did not discuss the meaning of "general industrial" in the context of 29 CFR Part 1910. See *Secretary of Labor v. Williams & Davis Boilers*, 8 O.S.H. Cas. (BNA) 2148 (1980 O.S.H. Dec. (CCH) ¶ 24818) (O.S.H.R.C.A.L.J. 1980).

Where, as here, there is no relevant exception or preemption, the regulations of "fixed general industrial stairs" in 29 CFR § 1910.24, not being limited to a specific industry, apply to all fixed stairs in every industry regulated by OSHA. That classification goes beyond stairs located around "machinery, tanks, and other equipment" and includes "stairs leading to or from floors . . . ." 29 CFR § 1910.24 (a). See also 29 CFR § 1910.21 (b) (8) (defining stairs, as used in § 1910.24, so as to include "[a] series of steps leading from one level or floor to another, or" leading to equipment). The stairs in CSX's office building on which Smith fell come within this description and not within the exceptions in 29 CFR § 1910.24 (a) applying "to stairs used for fire exit purposes, to construction operations to private residences, or to articulated stairs . . . ." Stairs in office buildings were not added to this list of exceptions even though they easily could have been so added.

Contrary to CSX's further argument, 29 CFR § 1910.23 (d) is not the only possible applicable OSHA stair regulation. It regulates different aspects of stairway safety than does § 1910.24. The application of § 1910.23, like § 1910.24, depends on whether regulation of the particular conditions at issue has been preempted through FRA's policy statement. *Secretary of Labor v. Consolidated Rail Corp.*, 10 O.S.H. Cas. (BNA), supra. Thus, the potential applicability of one section to a certain condition in a given industry does not exclude the other.

CSX alternatively contends that Smith offered no evidence at trial that 29 CFR § 1910.24 (f) was violated. However, witnesses testified that the nosings were "vinyl and slippery" and that if the nosings had had a nonslip finish, Smith's boot would have caught on the edge of the stair, preventing his fall. Therefore, the Court of Appeals correctly held that

> Smith presented evidence that the nosings on the stairs in the CSX administration building where he fell were not of a nonslip finish and that, together with the soap spill, the nosings' finish caused his fall.

*Smith v. CSX Transp.*, supra.

We conclude that, because the requirement in 29 CFR § 1910.24 (f) that the nosings be of nonslip finish was applicable to the stairs in CSX's office building, was raised by the evidence, and was not otherwise covered in the jury instructions, the trial court should have given Smith's request to charge the jury that it could consider a violation of that regulation as evidence of negligence on the part of CSX. See *Smith v. CSX Transp.*, supra at 901 (2), fn. 9 (setting out the request in full). Therefore, the Court of Appeals correctly

reversed the judgment of the trial court on this basis.

2. Despite that proper reversal, we nevertheless consider the evidentiary issue as well because we also granted certiorari for this purpose and because, as the Court of Appeals correctly observed, the evidentiary issue is likely to recur on retrial. *Smith v. CSX Transp.*, supra at 900 (1), fn. 7. In the Court of Appeals, Smith contended that " '[t]he trial court erred in allowing the jury to hear evidence of, and determine whether, [Smith] was out of service because, as a matter of law[, he] was within the broad scope of protection of the FELA, 45 U.S.C. § 51 et seq.' " *Smith v. CSX Transp.*, supra at 904 (Andrews, P. J., dissenting).

Although the portion of the motion in limine at issue addressed evidence that Smith was "out of service," it primarily dealt with evidence of past discipline, and only the issue of past discipline was addressed at the pre-trial hearing on the motion in limine. In opening statement, Smith's counsel stated that "[m]aybe [CSX] is going to say . . . that [Smith] shouldn't have been on the property." Indeed, CSX's attorney, in his opening statement, stated the following:

> Smith should not have been there that morning. He had been taken out of service just hours before . . . by company officials who told him, "You're out of service," which he knows means you're not allowed to come on company property. So he should not have even been there.

When the issue initially came up during testimony of the first witness, a bench conference ensued, during which Smith's counsel stated as follows:

> I think what we discussed in the motions in limine is that the specific discipline was not relevant . . . . What's relevant is they claim they took him out of service, and that's fine. They can argue that we saw him violating a rule and took him out of service.

Smith's attorney questioned three other witnesses, including Smith, with respect to the meaning of "out of service" and Smith's status in that regard.

The Court of Appeals correctly acknowledged that "the favorable ruling on Smith's motion in limine did not require him to object to evidence encompassed by his motion . . . ." *Smith v. CSX Transp.*, supra at 900 (1). See also *Reno v. Reno*, 249 Ga. 855, 856 (1) (295 SE2d 94) (1982); *Smith v. CSX Transp.*, supra at 903-904 (Barnes, P. J., concurring specially). However, "the party winning a motion in

limine may open the door to the offending evidence by offering evidence which in fairness allows the other side to delve into the area previously precluded." Neal W. Dickert, *Ga. Handbook on Foundations and Objections* § 6:13 (2011 ed.). See also *T & M Investments v. Jackson*, 206 Ga. App. 218, 220 (3) (425 SE2d 300) (1992). It is well-settled that, even though a party makes a motion in limine and obtains a favorable ruling thereon, when he nevertheless has interjected the prohibited evidence through his own testimony or otherwise " 'has himself induced what he subsequently [enumerates] as error [in that regard], he will not be heard to complain of it on appeal.' [Cit.]" *Booker v. Older Americans Council of Middle Ga.*, 278 Ga. App. 407, 410 (2) (629 SE2d 69) (2006). See also *Cook v. State*, 270 Ga. 820, 831 (12) (514 SE2d 657) (1999); *Board of Regents of the Univ. System of Ga. v. Ambati*, 299 Ga. App. 804, 808 (2) (685 SE2d 719) (2009). Thus, Presiding Judge Andrews correctly observed that,

> [g]iven his counsel's concession about the scope of the motion in limine ruling, and the testimony Smith himself gave on the "out of service" issue, Smith cannot complain that the trial court erred by allowing CSX to cross-examine him and present evidence concerning this issue. [Cits.]

*Smith v. CSX Transp.*, supra at 905.

We further note that, once the door was opened, the particular cross-examination of Smith and subsequent impeaching evidence was admissible. As the plurality opinion in the Court of Appeals concludes, Smith "opened the door to being impeached with evidence that tended to disprove his testimony." *Smith v. CSX Transp.*, supra at 900 (1). See also OCGA § 24-9-82; *Lee v. State*, 162 Ga. App. 259, 262 (4) (290 SE2d 307) (1982). " 'While a witness may not be impeached because of a discrepancy as to a wholly immaterial matter, a witness may be impeached on a collateral issue which is indirectly material to the issue in the case.' [Cit.]" *Barngrover v. Hins*, 289 Ga. App. 410, 412 (1) (657 SE2d 14) (2008). See also *Rogers v. State*, 282 Ga. 659, 666 (8) (653 SE2d 31) (2007). On cross-examination, Smith contradicted his deposition testimony that an employee who is out of service may not go onto railroad property without permission, and he affirmatively testified that he was not taken out of service prior to his fall. Because the circumstances surrounding Smith's dispute with the supervisors a few hours before he went to CSX's "administration building to attend the safety meeting were at least indirectly material to matters at issue in this case, including whether Smith was acting within the scope of his employment" at the time of his fall, "the trial court did not abuse its

discretion in allowing CSX to cross-examine Smith on the issue and in admitting the testimony of [the supervisors] for purposes of disproving certain facts to which Smith had testified. [Cits.]" *Smith v. CSX Transp.*, supra at 900-901 (1).

*Judgment affirmed. All the Justices concur, except Melton, J., who dissents.*

MELTON, Justice, dissenting.

Because I do not believe that the stairs on which Larry G. Smith slipped and fell are "fixed general industrial stairs" covered by OSHA at 29 CFR § 1910.24, I do not believe that the trial court erred by denying Smith's request to instruct the jurors otherwise. For this reason, the Court of Appeals' contrary finding should be reversed, and I must respectfully dissent from the opinion of the majority.

29 CFR § 1910.24 (a) states:

> This section contains specifications for the safe design and construction of fixed general *industrial* stairs. This classification includes interior and exterior stairs around machinery, tanks, and other equipment, and stairs leading to or from floors, platforms, or pits. This section does not apply to stairs used for fire exit purposes, to construction operations to private residences, or to articulated stairs, such as may be installed on floating roof tanks or on dock facilities, the angle of which changes with the rise and fall of the base support.

(Emphasis supplied.) As is clear from this definition, the statute governs stairs which are used for actual industrial purposes. Examples of these purposes are then set out in following subsections which refer to activities such as gauging and maintenance which "may expose employees to acids, caustics, gases, or other harmful substances" as well as "the carrying of tools or equipment by hand." 29 CFR § 1910.24 (b). To increase safety conditions during these industrial uses, fixed general industrial stairs must be constructed to handle heavy loads, 29 CFR § 1910.24 (c), and help prevent slipping when industrial uses are ongoing. 29 CFR § 1910.24 (f). In the truly industrial setting contemplated by 29 CFR § 1910.24, these requirements prevent related industrial accidents.

In this case, however, Smith slipped on stairs in a CSX office building on his way to a meeting room. This office building was used for administrative purposes only, and the stairs on which Smith slipped were interior stairs that were not used for any industrial purposes such as gauging, inspecting, accessing elevated platforms, etc. As a result, they are not "fixed general industrial stairs" under

29 CFR § 1910.24 which would require safety features specifically applicable to the type of truly industrial uses mentioned in the OSHA regulation. They were simply stairs adjoining two stories in an administrative office building owned by a company which was engaged in industrial uses *in other buildings and locales*.

Therefore, because the stairs were not "fixed general industrial stairs," the trial court did not err by refusing Smith's request to instruct the jury regarding this regulation under OSHA. Accordingly, the Court of Appeals' finding to the contrary should be reversed.

DECIDED OCTOBER 17, 2011.

*Casey Gilson, James E. Gilson, Karen R. Dunbar*, for appellant.
*Michael J. Warshauer, Douglas C. Dumont*, for appellee.