## A10A1603. REGENT v. THE STATE.
### (703 SE2d 81)

BARNES, Presiding Judge.

Steven Regent entered into a nonnegotiated guilty plea to aggravated assault and aggravated battery after twice slitting his girlfriend's throat. He was sentenced to twenty years on the aggravated assault, of which twelve were to be served in custody, and to ten years of probation on the aggravated battery, consecutive to the

---

assault sentence. After several hearings on the issue, the trial court also ordered Regent to pay restitution of $15,250 and denied his motion to void his aggravated assault conviction and sentence. Regent appeals pro se, arguing the trial court erred in refusing to void his aggravated assault conviction and sentence and erred in its restitution order. For the reasons that follow, we affirm.

1. The State argues that Regent's appeal should be dismissed because he had no right to directly appeal the denial of his "motion to void and vacate the illegal conviction and sentence on the aggravated assault charge." In *Harper v. State*, 286 Ga. 216 (686 SE2d 786) (2009), our Supreme Court held that a petition to vacate a judgment of conviction is not an appropriate remedy in a criminal case, overruling previous cases holding that a criminal defendant could challenge his conviction at any time by filing any motion or pleading alleging the conviction was void. The court subsequently explained that

> a claim that a charge should have merged under OCGA § 16-1-7 is a specific attack on the conviction. Although the determination that the conviction is void requires that the sentence also be set aside, as would be the case when a conviction is declared void for any reason, this fact does not alter the fundamental nature of the challenge to the conviction itself. In contrast, a challenge to a void sentence presupposes that the trial court was authorized to sentence the defendant but the sentence imposed was not allowed by law.

*Williams v. State*, 287 Ga. 192, 193 (695 SE2d 244) (2010).

Regent responds that this Court has jurisdiction to review the merger issue because he filed a timely direct appeal from the restitution order, and this is his first opportunity to argue the merger issue on appeal. We agree. Regent's sentence was not final until the trial court ruled on the restitution issue, which was directly appealable in its own right. See *Williams v. State*, 247 Ga. App. 783 (545 SE2d 343) (2001). Having jurisdiction over the restitution issue, we must address "all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below." OCGA 5-6-34 (d). Accordingly, we will consider whether the trial court erred in ruling on Regent's motion to vacate his aggravated assault conviction and sentence.

2. Regent contends the trial court should have merged the aggravated assault and aggravated battery counts because the facts supporting the assault charge were also used to support the battery charge, which included only the additional element of disfigurement.

Regent is not appealing from a conviction entered after a verdict following a bench or jury trial, however. He is appealing from a conviction entered after he pled guilty to aggravated assault and aggravated battery, and thus has waived the issue of whether the offenses merged.

When a criminal defendant pleads guilty to counts of an indictment alleging multiple criminal acts, and willingly and knowingly accepts the specified sentences as to such charged counts, the defendant waives any claim that there was in fact only one act and that the resulting sentences are void on double jeopardy grounds. [Regent] knowingly entered into the plea agreement, and having accepted the benefit of such bargain with the State, he now attempts to renege. Public policy and the ends of justice require that he not be allowed to do so.

(Citation omitted.) *Turner v. State*, 284 Ga. 494, 497 (2) (668 SE2d 692) (2008).

The fact that Regent's plea was nonnegotiated does not alter the conclusion that he waived his right to argue that the counts should have merged. *Carr v. State*, 282 Ga. App. 134, 136 (637 SE2d 835) (2006). He was fully aware that if he pled guilty to the two offenses, the State intended to seek imposition of a lengthy sentence, but chose to admit having committed the acts and avoid a trial on the question of his guilt or innocence. He understood the constitutional rights he gave up by pleading guilty, and understood that, because his plea was nonnegotiated, the court could have sentenced him to the maximum penalty for both counts. The trial court found the plea to be freely and voluntarily entered, and took into account Regent's acceptance of responsibility when issuing the sentence, which could have been as lengthy as 40 years to serve. OCGA §§ 16-5-21 (b); 16-5-24 (b).

Even if Regent had not waived the issue, we would conclude that the offenses did not merge. The facts as presented at the plea hearing were that Regent and the victim, a real estate agent, had been dating for two years. He had previously displayed no violent tendencies, and the victim testified that if she had been asked five minutes before the assault whether Regent would ever hit her or anyone else she would have said no. The couple had returned to the victim's house after a party in January 2008 and were making small talk when Regent flew into a sudden rage and punched the victim in the face. He hit her again and again, then stopped. The victim's eyes had swollen shut

and she could not see, she testified, but

> I could hear one of my kitchen knives pulling out of the wooden butcher block on the counter top, and then he was on top of me again, and had grabbed my hands and pinned them down, and took the knife and slithered it across my throat from here (indicating) all the way up behind my ear. He almost cut my ear off. I could feel the skin tearing. I was screaming. I couldn't see anything. And then he did it again. He cut again below it, and it's kind of fuzzy after that. . . . I was trying to get away. I put my hands up [and] that's why they were cut up.

The victim passed out and when she awoke, Regent was gone and there was blood "everywhere. Even on the ceiling. On the walls, the floor, the ceiling." The telephone was broken, so the victim made her way to the street and someone called an ambulance, which took her to Grady Hospital.

The victim was in intensive care on a respirator for three days and underwent surgery, during which the doctors reattached glands in her neck. They also attempted to reattach the main nerve on one side of her face, but the end had drawn up into her skull and it would have caused more damage to attempt to locate it. She remained in the hospital for a week, and as of the plea hearing a year later was only beginning to be able to speak properly. Her tongue did not function well, she could not swallow easily, and her sense of taste was gone. Her ring finger had been almost severed, and she had received 30 stitches in her hand, which was left with hypersensitivity in some spots and no feeling in others. She had permanent broken blood vessels on her face from electrical stimulation on her facial muscles and scars on her neck and hands. She testified that while Regent had always been somewhat jealous, the assault was extremely out of character, which is why she hoped he would remain incarcerated and unable to hurt anyone else.

Regent argued in his motion to void his aggravated assault conviction that he did not know when he pled guilty that he could not legally be convicted and sentenced to both crimes, and asserted that the only difference between the aggravated assault and aggravated battery counts was that one accused him of "cutting" the victim's throat and one accused him of "slashing" the victim's throat. That comparison, however, is incomplete. The assault count accused Regent of using a knife to seriously injure the victim, and the battery count accused him of using a knife to cause serious disfigurement. The evidence supports the conclusion that the two charges would not merge. See *Works v. State*, 301 Ga. App. 108, 113-114 (6) (686 SE2d

863) (2009); *Robbins v. State*, 293 Ga. App. 584, 585 (667 SE2d 684) (2008).

3. Finally, Regent asserts that the trial court erred in ordering him to pay $15,250 in restitution because the evidence regarding $15,000 of that amount was too speculative. "The amount of restitution ordered shall not exceed the victim's damages." OCGA § 17-14-9. The maximum amount of restitution recoverable in a criminal case is that which would be recoverable in a civil action. *Lawrenz v. State*, 194 Ga. App. 724 (1) (391 SE2d 703) (1990). The sufficiency of evidence to support an order of restitution should be measured by the civil standard of preponderance of the evidence. Id. at 725.

The victim testified that she had no insurance and had been treated at Grady Hospital for both her initial week-long hospitalization and subsequent occupational and speech therapy. Eleven months after the attack the victim stopped receiving therapy because she could not afford it, but planned to go to a neurosurgeon after her scars healed to try again to have her severed facial nerves reconnected. At one of the later restitution hearings the victim testified that she had consulted a plastic surgeon to see "what could and couldn't be done, what I could expect, and what it would cost." When the State asked the victim how she would pay for future surgery on her neck, she replied that she did not know, and explained that she had gone to a plastic surgeon for information because she did not have several hundred dollars for a neurosurgical evaluation. A board-certified plastic surgeon testified that he had consulted with the victim regarding the multiple lacerations across her throat and to her hand. He concluded that he could perform rehabilitative surgery which could release the contracture from the victim's scar tissue and increase her restricted range of motion in her neck and hand, as well as improve the sensation in her hand. The doctor would also attempt to reattach severed facial nerves that were not repaired during her first surgery, and estimated that the cost of this surgery would range from $10,000 to $15,000, which included his fee, the anesthesiologist's fee, and operating room costs. The State asked the court to award restitution of $50,000 for the Grady bill, $250 for medication costs, and $15,000 for the future surgery.

The trial court found that the Grady bill had not been proven by a preponderance of the evidence, because the State presented no definitive testimony regarding how much of the bill the victim would actually be required to pay. The court then awarded restitution for the victim's prescription costs of $250, proven by previous testimony and exhibits, and future surgical costs of $15,000, based on the surgeon's testimony that the recommended procedure was not for cosmetic purposes but to allow the victim greater ease of movement.

In its written restitution order, the trial court considered Regent's present financial situation, his bachelors and masters degrees, his previous professional employment in the fields of technology and finance, and his future earning potential, as required by OCGA § 17-14-10.[1] The court also considered the amount of damages proven and the goal of restitution to the victim, and ordered Regent to pay restitution in the amount of $15,250.

This Court's review of evidence is limited to questions of sufficiency, and after reviewing the record, we conclude that the evidence of damages was sufficient and the amount of restitution did not exceed the victim's damages. See *DuCom v. State*, 288 Ga. App. 555, 563 (5) (654 SE2d 670) (2007); *T & M Investments v. Jackson*, 206 Ga. App. 218, 221 (5) (425 SE2d 300) (1992) (special damages awarded for future medical expenses supported by sufficient evidence from physician who recommended plaintiff continue physical therapy and obtain additional tests costing $650 to $700). Although Regent presented other methods that would have yielded a different amount of restitution for damages, this argument addresses only the weight of the evidence before the trial court, not its sufficiency. *Anderson v. State*, 226 Ga. App. 286, 288 (486 SE2d 410) (1997).

*Judgment affirmed. Senior Appellate Judge G. Alan Blackburn and Senior Appellate Judge Marion T. Pope, Jr., concur.*

DECIDED OCTOBER 27, 2010 — 

Steven Regent, *pro se.*
*Paul L. Howard, Jr., District Attorney, Lenny I. Krick, Assistant District Attorney*, for appellee.

[1] We note that the trial court is no longer required to make written findings of fact regarding the statutory factors, as long as the evidence presented at the hearing supports the conclusion. *McCart v. State*, 289 Ga. App. 830, 832 (1) (658 SE2d 465) (2008).