A12A0470. CARSON v. THE STATE.

(723 SE2d 516)

ELLINGTON, Chief Judge.

On June 21, 2010, Rashaad Carson entered a nonnegotiated (i.e., "blind") guilty plea in the Superior Court of Douglas County to armed robbery, OCGA § 16-8-41 (a); three counts of aggravated assault with a deadly weapon, OCGA § 16-5-21 (a) (2); cruelty to children in the first degree, OCGA § 16-5-70 (b); and possession of a firearm during the commission of a felony, OCGA § 16-11-106 (b) (1). The trial court sentenced him to 25 years imprisonment, 13 to serve. On July 12, 2010, Carson filed a motion to withdraw his guilty plea. Following a hearing, the trial court denied the motion. Carson appeals, contending that the court erred in denying his motion because his guilty plea was not entered knowingly and voluntarily and that the court erred in failing to merge two of his convictions.

Finding no error, we affirm.

1. Carson contends that he did not voluntarily and knowingly enter his guilty plea, claiming that he did not understand the consequences of the plea because he believed that he could withdraw his plea and proceed to trial if he was not comfortable with the trial court's sentence.[1]

"[A] guilty plea may be withdrawn anytime before sentencing, [but,] once a sentence has been entered, a guilty plea may only be withdrawn to correct a manifest injustice[.]" (Punctuation and footnote omitted.) *Earley v. State*, 310 Ga. App. 110, 112 (712 SE2d 565) (2011).

> A ruling on a motion to withdraw a guilty plea lies within the sound discretion of the trial court and will not be disturbed absent a manifest abuse of such discretion. When the validity of a guilty plea is challenged, the [S]tate bears the burden of showing affirmatively from the record that the defendant offered his plea knowingly, intelligently, and voluntarily.

(Punctuation and footnote omitted.) *Muckle v. State*, 283 Ga. App. 395, 397 (641 SE2d 603) (2007).

The transcript of the guilty plea hearing shows that the State met its burden of proving that Carson's guilty plea was entered knowingly and voluntarily. It shows that Carson was able to read and write, had completed three years of college, and was employed by Delta Airlines at the time of the crimes. The evidence of his participation in the crimes was overwhelming and included his arrest near the scene minutes after the crimes were committed, his possession of the victims' property when he was arrested, the victims' identification of him as the perpetrator, and his videotaped confession to the crimes while in jail.

During the plea hearing, the following colloquy took place:

> State: We are here today because we were going to start your jury trial; however, it is my understanding that you intend to enter what's known as a nonnegotiated or a blind plea; do you understand?
> Carson: Yes.
> State: So that means that your punishment will be left entirely up to the judge; do you understand that?
> Carson: Yes.

---

[1] In his appellate brief, Carson admits that his trial counsel was not ineffective in representing him and that he "simply misunderstood what would be involved in a blind plea."

State: Do you understand, also, that . . . based on the indict-
ment against you, . . . [t]he amount of time in prison that
you are looking at total is 105 years on all counts, if the
judge were to run them consecutively or back to back; do
you understand?
Carson: Yes.

The court later clarified that Carson was, in fact, facing a possible life
sentence on the armed robbery count, but it quickly added that it
was not going to impose a life sentence. Even so, the court empha-
sized that, because an armed robbery is considered a serious violent
felony, Carson would have to serve whatever term of imprisonment
to which he was sentenced on that count without the possibility of
parole, and Carson responded that he understood that requirement.
The court added, "[e]ssentially what you are doing today, Mr.
Carson, is pleading guilty and throwing yourself [on] the mercy of
the Court; do you understand that?" Carson responded, "[y]es, sir."

The record also shows that Carson's attorney reviewed a notice
and waiver of rights form with Carson and that Carson admitted that
he had read the waiver of rights form and had understood it. The
prosecutor elicited Carson's acknowledgment that he was waiving
each of the rights to which he was entitled, and the trial court
confirmed that Carson understood that, by pleading guilty, he was
waiving each of those rights. In addition, Carson stated that he was
entering his plea freely and voluntarily, that no one had promised
him anything to get him to plead guilty, and that he had not been
forced in any way to enter the guilty plea, nor had he been promised
anything in exchange for his plea. Carson also stated that he was
satisfied with his attorney's representation of him. Finally, Carson's
attorney asked for leniency based upon Carson's lack of a criminal
history and his cooperation with the police following his arrest, but
he added that Carson "understands that he is going to have to go
away for a very long time," and that Carson understood that he was
facing a minimum sentence of ten years for the armed robbery.

The trial court then sentenced Carson to 25 years imprisonment,
13 to serve, noting that certain circumstances affected his sentence,
including the fact that the crimes were premeditated and that one of
the victims was a child. Carson filed a motion to withdraw his guilty
plea three weeks later.

In addition to confirming the above facts, the transcript of the
hearing on Carson's motion shows that, in the months before his
trial date, Carson rejected two proposed plea offers because he would
have had to testify against his co-defendant and he was afraid for his
safety in prison if he cooperated with the State. In fact, he adamantly
refused to testify against his co-defendant under any circumstances

"due to safety issues." After Carson's rejection of the plea offers, the State refused to negotiate further and refused to agree to a cap on any sentence that resulted from a guilty plea. At that point, Carson's trial attorney told him that their only remaining option to avoid trial was to enter a "blind" guilty plea, and he thoroughly explained to Carson that the trial court judge would have "free reign" to decide the sentence, as long as it was within the minimum and maximum sentences for the indicted crimes.

When asked if there was any doubt in his mind that Carson knew what he was doing when he pleaded guilty, Carson's trial attorney testified that, "I think that [Carson] knew exactly what it was that he was doing. It was just [that there] . . . weren't a lot of options that he was happy with, so it was just more or less choosing [either to go to trial or to enter a blind guilty plea]. . . . I mean, he didn't like either one of [those options]." As for Carson, he specifically admitted during the motion hearing that he knew that armed robbery carried a mandatory minimum sentence of ten years imprisonment before he pleaded guilty. Even so, he said that he was surprised that he would have to serve 13 years given his lack of criminal history, adding that he thought 13 years was a "little bit harsh." Yet, even after insisting that he wanted to withdraw his guilty plea, and even after the State refused to make any further plea offers, Carson still seemed taken aback when he realized that, if the court granted his motion, his only remaining viable option was to take his chances at trial. Thus, as the trial court found, Carson "did not argue that there was any manifest injustice in this [sentence]. Rather, he essentially argue[d] that he wants a lighter sentence. That is not a ground for the court to grant a motion to withdraw a guilty plea."

Given the record before us, we conclude that the State met its burden of showing that Carson understood the constitutional rights he was giving up by pleading guilty; that Carson understood that, because his plea was nonnegotiated, the trial court would sentence him to at least ten years imprisonment and could sentence him to a maximum sentence of life in prison; and that Carson knowingly and voluntarily entered his guilty plea in order to avoid a trial on the indicted charges. Accordingly, we find that the trial court did not abuse its discretion in denying Carson's motion to withdraw his guilty plea. *Earley v. State*, 310 Ga. App. at 114 (2) (b).

2. Carson also asserts that the trial court erred in failing to merge Count 2 of his indictment, aggravated assault, with Count 1, armed robbery of the same victim. We disagree.

As shown in Division 1, supra, Carson knowingly and voluntarily pleaded guilty to each of the crimes for which he was indicted. As a consequence, he has waived all defenses except that the indictment

charged no crime, including the issue of whether the offenses merged as a matter of law or fact. *Regent v. State*, 306 Ga. App. 616, 618 (2) (703 SE2d 81) (2010); *Sanders v. State*, 282 Ga. App. 834, 835-836 (1) (a) (640 SE2d 353) (2006).

> When a criminal defendant pleads guilty to counts of an indictment alleging multiple criminal acts, and willingly and knowingly accepts the specified sentences as to such charged counts, the defendant waives any claim that there was in fact only one act and that the resulting sentences are void on double jeopardy grounds.

(Citation and punctuation omitted.) *Regent v. State*, 306 Ga. App. at 618 (2). Here, Carson chose to admit that he committed the acts so he could avoid a trial on the question of his guilt or innocence, and, his having accepted the benefits of such a bargain, it would be contrary to public policy and the ends of justice to allow him to avoid the consequences of his agreement. Id.; see also *Lord v. State*, 303 Ga. App. 378, 379 (693 SE2d 533) (2010) (accord); *Sanders v. State*, 282 Ga. App. at 835-836 (1) (a) (accord). "The fact that [Carson's] plea was non-negotiated does not alter the conclusion that he waived his right to argue that the counts should have merged." (Citation omitted.) *Regent v. State*, 306 Ga. App. at 618 (2).[2]

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*

DECIDED FEBRUARY 17, 2012.

*Drummond & Swindle, Jason W. Swindle*, for appellant.
*David McDade, District Attorney, James A. Dooley, Assistant District Attorney*, for appellee.

---

[2] Carson's reliance on *Hall v. State*, 313 Ga. App. 66 (720 SE2d 181) (2011), is misplaced, as the defendant in that case was sentenced following a jury trial, not a guilty plea, so there was no waiver of his merger claim.